No. 8328.

THE STATE EX REL. E. BUISSON, ET AL., VS. H. L. LAZARUS, JUDGE, ET ALS.

Under the provisions of Article 130 of the Constitution, any one of the five judges of the Civil District Court for the Parish of Orleans, has the power of issuing interlocutory orders, besides conservatory writs, in any cause pending in said Court, in case of absence, sickness or other disability of the judge to whom such cause was originally assigned.

State ex rel. Buisson et al. vs. Lazarus, Judge, et als.

By the terms of the same Article of the Constitution, the judge to whom a cause has been assigned, has alone the power of rendering judgment on the merits of the case. But the Constitutional direction is not one of public order, and does not strike with absolute nullity such a judgment when rendered by any other of the five judges. The parties to the suit themselves may consent that the judgment be so rendered. Therefore, a judgment rendered by another judge than the one to whom the cause was assigned, in case writs of absence or other disability of the latter, may be valid, if no timely opposition or objection is made thereto.

APPLICATION for writs of Prohibition and Certiorari.

G. Duplantier for the Relators.

W. E. Murphy and Thos. J. Semmes for the Respondents :

First—The relators are not entitled to the relief claimed, the case being appealable. C. P. 857 ; State ex rel. vs. Skinner, Judge, 33 An., p. 1092 ; State ex rel. Debuys vs. Judge Civil District Court, 32 An 1256.

Second—The relators have not served the notice required by Sec. 2 of Rule XII, of the rules of this Honorable Court to obtain their writ of Prohibition.

Third—Relators have not filed any transcript of the proceedings in the court a qua, and the Court cannot pass on their demand.

Fourth—The relators having acted on and sanctioned the different proceedings complained of, cannot have the same avoided by a writ of certiorari. C. P. Art. 864 ; State vs. Judge City Court, 33 An. 15.

Fifth—Art. 130 Constitution, in case of the absence or sickness of any one judge of the court, authorizes any other judge to issue conservatory writs or orders, etc.

Sixth—A judge of one of the divisions of the Civil District Court being absent from the State, or unable, from sickness or other cause, to hold court, another judge of the court can replace him during said absence. Acts of 1855, No. 225 (p. 317), Sec. 13 ; Acts of 1865, No. 44 (p. 82), Sec. 3 ; Widow J. C. St. Romes vs. The Levee Steam Cotton Press Co., 5900 (1876) of this Court (not reported), affirmed by this Court in same case ; 3 An. 224.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   This is an application for a prohibition and for a certiorari.

The complaint is, that the defendant, who is one of the recognized judges of the Civil District Court for the parish of Orleans, has usurped judicial powers, with which he was not clothed, but which were and are vested in another judge of the same court, and that, in the prohibited exercise of the same, he has illegally made several decrees and rendered a final judgment which operate to the injury and detriment of relators.

The defenses are : the appealable character of the suit in which the defendant acted, a denial of the usurpation charged, and a consequent vindication of the acts assailed.

We will premise that a writ of prohibition can issue, on a proper showing, in any case, whether appealable or not, at the discretion of the Court, to arrest a judicial usurpation of authority ; and that the production of the record, under the certiorari, can be dispensed with, the

averments of facts in the petition not being controverted. We will add that we cannot, in an application for the last proceeding, pass upon the intrinsic correctness of the judicial acts complained of, and that we can only determine, in such a case, whether they were or not done according to the forms prescribed by law.

After thus disembarrassing the case, we will now proceed to consider the matter before us in one respect only, which is decisive of the controversy.

The dominant question is : Whether one of the judges of the said court can lawfully act in the place of another judge of the same court, absent on executive leave.

For a proper determination of that novel and important question, we think it advisable to divide the inquiry, and, in so doing, to ascertain :

I. Whether such judge can act at all, in the place of another, and if so, in what particular cases.

II. Whether he can so act by virtue of law in *other* cases, not specially provided for.

III. Whether he can act in all cases by consent of parties.

1. A perusal of article 130 of the Constitution, under which the question is presented, impresses the mind with the conviction that its framers intended to provide for a speedy, full and impartial administration of justice by the courts which it creates and organizes.

The article, above all, contemplated a suppression of the opportunities for conflicts of jurisdiction or want of jurisdiction which too frequently occurred under the system of courts previously existing in the parish of Orleans.

Its object was, by creating one Civil District Court *only*, to blend all probate and civil jurisdiction, in all cases in which the matter in dispute would exceed two hundred dollars, and to provide for an equal, indiscriminate distribution by allottment and assignment of such cases among the judges composing it, in accordance with rules to be adopted to that end.

It is apparent that the Convention intended that a judge to whom a cause would be thus allotted and assigned, should have " exclusive control over it from its inception to its final determination ; " but, in their wisdom, its members foresaw the certainty, that a judge to whom a cause might have been thus allotted and assigned, would, at times, be either legally or physically incapacitated from passing upon it. They foresaw the cases in which a judge would have to recuse himself, would be absent, sick, or otherwise prevented from trying the cause. They foresaw besides, cases of vacancy, from any cause, and they proposed to provide for these contingencies.

State ex rel. Buisson et al. vs. Lazarus, Judge, et als.

They declared that, in cases of recusation and of vacancy, the cause allotted and assigned should be re-allotted and re-assigned to some other judge who, necessarily, would exerçise over it the same exclusive control, which he would have had, if it had been originally allotted and assigned to him.

As to the other cases in which the disability was to be physical, whether on account of absence from the parish, or of sickness, the Convention viewed them and dealt with them as to be of short duration, omitting to provide expressly for the determination of causes on *their merits*, in cases of protracted sickness or absence.

The relators admit that, in the case of a temporary absence, the defendant judge would have had the right of replacing the absent judge, but they claim that he would have had the right to do so *only* for the purpose of issuing conservatory writs, and for none other. They conclude that, as long as the absence lasted, no order whatever could be legally made in the case, either by the defendant judge or any other judge of the court.

We do not read the article in the same light. We do not believe that it contains any useless language or illogical and hurtful tautology. After a careful examination and mature deliberation, we find that the article wisely provides that, in case of absence from the parish of a judge, any other judge shall have power, not only to issue conservatory writs, but also to grant " *orders.*"

As was well observed by the learned counsel for the relators, there exists such a vast difference between conservatory writs and interlocutory orders, that in no instance can they be assimilated or confounded. Conservatory writs are provisional safeguards, granted at chambers and on *ex parte* showing. Interlocutory orders are decrees subsequently made, sometimes in the same mannei, or in open court, or contradictorily, on preliminary or incidental matters, and preparatory of the case for a decision on its merits. The power to issue the writ, when vested in a judge, implies that of dissolving it. Orders for conservatory writs are not liable to be suspended by appeal, while some of the others, likely to occasion irreparable injury, can be kept in suspense in that manner. We do not perceive that the Constitution, in article 130, uses the word " *orders* " as synonymous of " *conservatory writs.*" The word is employed without any qualification or restriction, and, therefore, applies to *all conservatory orders* which justice may require to have made, in the course of judicial proceedings, exclusive of judgment on the merits. The provision authorizes both : the issuance of conservatory writs *and* the granting of conservatory orders. It, therefore, includes interlocutory orders of the nature of those made by the District Judge, and which consisted merely in rescinding an order for an

injunction, owing to the insufficiency of the surety and in requiring another.

Finding, as we do, that the District Judge had the right to grant those conservatory orders, that they appear to have been made after observance of the forms of the law, we have no authority to pass upon their correctness in the proceeding for a *certiorari*. If the case be, as it is claimed, within our appellate jurisdiction, and those orders are brought up for review, then we will inquire into such correctness, and not otherwise.

2. Since the word "*orders*" can be so interpreted as to cover only interlocutory orders or decrees of a conservatory character, it is irresistibly clear, that the action of a judge on the merits of any cause not allotted and assigned to him, but to another, who happens to be sick or absent, is wholly unauthorized. Hence, the District Judge in this case cannot be justified in rendering the judgment of dismissal which is attacked by these proceedings.

3. The fact having arisen, however, that such judgment was rendered, the question forces itself, under considerations of public policy, whether it is absolutely or relatively null, void or voidable, and whether an enforcement of it by the judge who rendered it, would constitute such usurpation as would warrant the issuing of the prohibition asked.

It is argued that, from the fact that, in clear terms, the constitutional article under consideration provides that the judge to whom a cause shall have been allotted and assigned, shall have *exclusive control* over it, from beginning to end, it follows that it impliedly prohibits every other judge from taking jurisdiction over it, unless in case of absence or sickness, and then only for certain purposes, and, therefore, from passing upon its merits. That is undoubtedly so ; but is that bare, implied prohibition such, that individuals cannot renounce the benefit of an allotment or assignment, established in their favor, when such renunciation is not actually prohibited, when it does not affect the rights of others and is not contrary to public good? We do not think it is.

In his work on the theory of nullities, Solon says : " Dans le doute si une nullité est d'ordre public, ou de droit privé, le silence du législateur doit être interprèté en ce sens, que la nullité n'a été portée que dans un intérêt privé. On conçoit, en effet, que si elle était d'ordre public, le législateur l'aurait exprimé, ou, du moins l'aurait donnée à connaître. Dans le doute, on doit toujours se prononcer pour la validité de l'acte. *Et hœc quidem interpretatio per quam actus sustinetur, dicitur regina interperlationum.*" Decius in Leg. No. 11, Cod. de Mili. Testa. Solon vol. 1. p. 12, No. 23 ; also p. 4, No. 7 and following paragraph.

Dunod, an author also of acknowledged distinction, says : " Quoique la fin de la loi soit toujours l'intérêt public et de la société, la vue de

cet intérêt est souvent éloignée, et' la loi considère alors, en premier lieu, dans sa prohibition et dans les nullités qu'elle prononce, l'intérêt des particuliers. *Primario spectat utilitatem privatam et secundario, publicam.*"

Toullier lays down, as a general rule, that an individual has always the right to renounce the benefit of laws which have been enacted for his benefit ; that the cases in which he cannot do so, form the exceptions and are confined within narrow limits. They are : 1. where the law has itself prohibited any deviation from its provisions ; 2. where the disposition is absolutely prohibitory ; 3. where the law has for its foundation, some public or political cause, or the interest of third persons. See Toullier vol. 1, No. 101 to 111 ; also Merlin R. J. vol. Renonciation No. 1 ; Zachariae vol. 1, p. 64 ; Duranton, vol. 1, p. 25, No. 110; Marcadé, vol. 1, p. 671 ; Dunod Presc. 1ère Part. C. 8, p. 47 ; Laurent vol. 1, p. 82 et seq. Pandectes françaises. See also; 3 An. 328; 10 M. 226; 6 L. 60 ; 18 An. 68, 148 ; 33 An. 662.

Indeed the maxim of the Roman law upon which the theory and conclusions of those commentators are made to rest, is to the effect : *Regula est juris antiqui, omnes licentiam habere jus quæ pro se introducta sint remenuare.*

Under the weight of these authorities, we consider that the nullity resulting from the rendition of a judgment, in disregard of the constitutional provision under the circumstances of this case, is not absolute, and is, therefore, relative and curable.

A judgment is absolutely null, either, when it is rendered by a court having no jurisdiction *ratione materiæ et personæ,* or having jurisdiction *ratione materiæ* only, even if the parties acquiesce in it, for such consent cannot give jurisdiction. In order to determine whether the court is incompetent, the test is whether, on the face of the papers, it had jurisdiction of the subject matter and of the persons of the litigants.

If it have neither, it is incompetent. If it have not the former, it is also incompetent. If it have the former, but not the latter, and objection was seasonably raised and overruled, it is incompetent. If it have the former and not the latter, but the parties have expressly or impliedly submitted to its powers, it is competent.

In the two first instances, the incompetency is absolute and cannot be cured. In the third instance, it is relative and curable ; in the last instance, the competency is as absolute as where a court has jurisdiction both *ratione materiæ* and *personæ.*

In the case of the relative incompetency, the resulting nullity is for the benefit of individuals who can waive their objections, in advance, or ratify the act subsequently.

In cases of absolute incompetency, or want of jurisdiction, the

remedy would be a prohibition from this Court, under article 90 of the Constitution, unless, in appealable cases, parties prefer having the question of nullity determined on appeal. Judgments absolutely null on the face of the papers have no bottom upon which to stand. They require no suit in nullity to be avoided, as they can be collaterally attacked. Not being susceptible of ratification, it is struck with sterility and can produce no effect whatever.

We do not think that in testing the jurisdiction of a court, in that manner, in cases like the present one, judicial inquiry is to be extended to what intervened or not before judgment, unless on averment made and established, that valid, seasonable objection was urged and disregarded.

It is manifest that the Civil District Court, in this case, was fully competent, as a court, *ratione materiæ et personæ.*

The objection of incompetency, from which the charge of usurpation of powers spring, is not levelled at the judicial power of the court, as a constitutional organization for the administration of justice, in all civil cases contemplated ; but it is directed against the right of one of its members of exercising them, who, in certain contingencies, provided by the Constitution, could have lawfully wielded all of them, independently of the will or consent of litigants amenable to the court. The contention is, that no contingency contemplated by the organic law has arisen, which has put into activity the right of the judge to exercise the powers of the court, which are dormant in him, until such contingency occurs. In other words : the objection is aimed, not at the jurisdiction of the *court* as a court, but at the irregularity of the mode, or illegality of the process, by which the cause appeared before the judge and was passed upon by him. It goes to the administrative power of regulation exercised by the judge, in disposing of the suit, *quasi* on its merits, but not really so, as he merely dismissed the proceeding, as in case of nonsuit, with costs.

In the absence of any timely opposition on the part of the defendants in the action, it was illicit, but not illegal, for the District Judge to have entertained the motion to dismiss the case and to have granted it.

We do not think that the judgment so rendered is a nullity; voidable either by action or appeal, and that it is competent for this Court, in the exercise of its plenary powers of supervisory control over inferior courts, to prohibit the District Judge from executing the judgment by coercing the payment, by the plaintiffs, of costs incurred by the defendants in the defense of their rights.

Our reason is : that no objection was raised by the defendants to the action of the judge, who exercised on the occasion, if not the powers of a judge *de jure*, at least those of a judge *de facto*.

If the judgment were null, it would not be absolutely so, because rendered in disregard of a constitutional provision, prohibitory by implication, as, that provision is not one enacted exclusively for the public good and the maintenance of public order; but is one also for the benefit of litigants, who can waive the allotment or assignment to which it refers.

The judgment might be a nullity and the judge might be prohibited from executing it in any manner, had it been rendered *without* the assent, express or implied, of the relators, or in defiance of their solemn protest. Their inferred acquiescence is not lacking in the instant case.

If, instead of being, as it is, a mere judgment of dismissal, which passes on no issue, which pronounces neither for nor against any one and which leaves the door open for a new proceeding, the judgment complained of were one really on the merits of a controversy, setting it at rest, it would have been such a judgment as could have acquired the force of *res adjudicata*, because rendered by a judge *de jure* and *de facto*, in the name of a court competent *ratione materiæ et personæ*, although, perhaps, in contravention of a regulation of public concern; for it is the interest of the commonwealth that there be an end to litigation.

The importance which the law attaches to the authority of the thing adjudged is such, that in none but clear cases will it permit that a controversy, apparently adjusted by a final judgment of competent judicial authority, be unravelled and that the differences of parties be again agitated in the *forum*. It is from that standpoint that the Court of Cassation of France, has twice declared, with the high authority to which civilized countries recognize that it is entitled, that the proposition is such a *constant principle* that it is almost axiomatic.

" L'autorité qui s'attache à la chose jugée est si absolue qu'il est interdit d'y porter atteinte alors même que le jugement du quel elle résulte, aurait méconnu ou violé des règles de compétence, fondées sur des motifs d'ordre public."

J. P. 1867, 20 août 1867, p. 1082 ; 1872, p. 973.

The Court of Cassation of Belgium has ruled in the same sense. See Pasicrisic, 1843, p. 150; 1857, p. 165 ; also Dalloz, 1867, 1, 376 ; Pasicrisic, 1836, 2, 207.

In Moses vs. Julian, 45 N. H. 53, the Supreme Court of that State has, in an elaborate and learned opinion, summed up the matter of disqualification, under fifteen different heads, among which are the following :

In cases where the statute does not make the proceedings void, parties must object before trial, or the objection will be waived.     *

 *     *     Unless the statute forbids, parties may expressly waive

NEW ORLEANS, DECEMBER, 1881.     1433

State ex rel. Buisson et al. vs. Lazarus, Judge, et als.

objection, which is called in Civil and Scotch law *prorogated jurisdiction.* In the case of Schenly vs. Commonwealth, 36 Penn. St. p. 29, it was distinctly held that an objection which goes not to the judicial power of the court, but to the mode in which the case is brought before it, will not avail the defendant, after appearance and plea in bar.

See, also, 45 Ala. 513, Hine vs. Hussey.

It is, then, manifest and indisputable that, had the defendant judge passed upon the merits of the controversy, as raised in the petition, either by annulling the judgment and the sale attacked, or by maintaining both, the judgment thus rendered would not have been an absolute nullity on the face of the record, consisting, as it would have, of the petition, answer and judgment.

The court was competent *ratione materiæ et personæ;* the defendant judge was a judge *de jure* of that court, authorized to exercise all its judicial powers, and had done so.

It would not be legitimate to go behind the judgment to ascertain whether the case had been or not allotted to the judge who decided it, to determine of the validity of the judgment in such a case. We repeat that it would then have been such a judgment as could have acquired the force of *res adjudicata.*

The doctrine extends even to the trial of a case by a judge *de facto.* One who supposes himself to be invested with office, and who, not being a mere intruder or usurper, acts in good faith as a judge, may constitute a court *de facto.* An objection to his authority may be made *before* the trial, or it will be disregarded. Call vs. State, 5 Ind. 1; State vs. Arrone, 2 Mott. & Mc. 27; State vs. Alling, 12 Ohio 16; State vs. Carroll, 38 Conn. 449; State vs. Douglass, 50 Mo. 593; Freeman on Judgments, Nos. 145–148 ; 22 An. 629 ; 26 An. 274 ; 28 An. 82 ; 32 An. 931.

In the case of State vs. Carroll, 38 Conn., to which reference is above made, and which is well considered and discussed, it was decided that, where it was provided by law that, in case of sickness or absence of a judge of a city court, a justice of the peace should be called in, to hold the court, as acting judge, during such temporary absence or sickness, and a justice was thus called in and acted, the judgments rendered by him are binding, whether the law under which the call was made, and the court held, was valid or not, because he was an officer *de facto,* if not *de jure.*

In State vs. Douglass, 50 Mo. 590, also referred to, it w s held that where one acts as a *de facto* judge, under a law which invests him with authority, although it be unconstitutional, he is not an intruder, and his acts, done under color of office, must be taken to be valid. See, also, 38 Mo. 327 ; 49 Mo. 299 ; 24 Ill. 184.

We do not think that the Act of 1855, No. 255, which received judi-

cial consideration in 31 An. 224, and which made it the duty of each of the District Judges of the District Courts of New Orleans to hold the court which any one of the other judges might have been incapacitated from holding, by reason of illness or leave of absence, has survived the constitutional provision which has abolished the system of courts previously in existence in the parish of Orleans, and which has substituted to it the present organization of *one* Civil District Court only.

That law died away with those courts, and is, therefore, no longer in being; the more so, as it is utterly incompatible with article 130, under consideration, which confers, as we have seen, exclusive control of a cause, throughout, to the judge to whom allotted and assigned, unless in specified cases, and, being inconsistent with the organic law, has become a lifeless form.   Art. 259.

We therefore conclude that, as the relators have not seasonably objected to the trial of their case by the defendant judge, in the absence of the judge to whom it had been allotted and assigned, their complaint comes too late, and cannot be entertained.

By ruling as we do, in a case which is one *sui generis*, and of which we know of no precedent, we have placed upon the article of the Constitution under consideration a fair, logical, legal and practical construction, which vivifies and gives effect to language which was not frivolously inserted into it, and which otherwise would prove meaningless and cumbersome.   It leaves the doors of justice open, in contingencies which have not been clearly provided against by any irritating clause, to *bona fide* litigants, desirous of a speedy adjustment of their differences.

Holding to the reverse, would be, perhaps, to overturn unnecessarily adjudications in matters of magnitude, and thereby occasion, possibly, great and irreparable damage, pecuniarily and morally, and to clog the administration of justice on technicalities which, if recognized, would be productive of no good and fruitful of considerable and even incalculable injury.

We are relieved from the necessity of considering other defenses urged by the defendant judge.

It is, therefore, ordered that the preliminary orders herein made be rescinded, and that the applications herein be refused, with costs.