### Ex parte BRIGGS, and five other cases.

(At Chambers in St. Paul, Minn. June 29, 1925.)

Nos. 4608, 4611–4615.

I. Criminal law ⊜⇒100(2)—Order establishing working division of business between the two District Judges of the Eastern district of Oklahoma held not to affect the jurisdiction of either judge to receive indictments and pleas and impose sentence (Comp. St. § 990).

The order of the senior Circuit Judge, under Judicial Code, § 23 (Comp. St. § 990), establishing a working division of business between the two District Judges of the Eastern district of Oklahoma, was not intended to, and did not, establish a rigid limitation of jurisdiction between the two, and did not affect the jurisdiction of either, by agreement between them, to receive indictments and accept pleas and impose sentence.

2. Criminal Law ⟨key⟩100(2)—Criminal jurisdiction of federal court continued as to offenses committed in territory transferred to new district prior to such transfer (Comp. St. §§ 1041, 1088d).

Under Act Feb. 16, 1925 (Comp. St. §§ 1088–1088e), establishing the Northern judicial district of Oklahoma, section 5 of which (Comp. St. § 1088d) expressly continues jurisdiction in the courts of the Eastern and Western districts, to commence and proceed with the prosecution of crimes and offenses committed therein prior to the establishment of said Northern district, and Judicial Code, § 59 (Comp. St. § 1041), relative to establishment of new districts, a District Court of the Eastern district, at a term held within territory of the new district after passage of the act, but before organization of the court in that district, had full jurisdiction to indict and try, and on conviction or plea of guilty to sentence, persons charged with crime.

Habeas Corpus. Petitions by C. C. Briggs, by Lawrence Freeman, by Harry Lee, by W. H. Clark, by J. A. Tilley, and by J. I. (Whitey) Barnett for writs of habeas corpus. On final hearing writs denied.

Franklin H. Griggs, of Tulsa, Okl., for petitioners Briggs, Freeman, Lee, and Clark.

J. H. Sykes, of Tulsa, Okl., for petitioners Tilley and Barnett.

Frank Lee, U. S. Atty., of Muskogee, Okl., for the United States.

VAN VALKENBURGH, Circuit Judge. Upon application writs were issued in the above-entitled cases, and pending a hearing thereon, owing to the engagements of the United States attorney, the petitioners were admitted to bail. Upon due notice, by their counsel above named, all parties appeared before the undersigned Circuit Judge at chambers in St. Paul, Minn., within said circuit, and by consent said cases were all heard at one hearing, and after full argument, and the submission of authorities and briefs, were submitted for final determination upon the merits.

The petitioner Briggs was indicted at the special September term, 1923, of the District Court of the United States in and for the Eastern District of Oklahoma, held at the city of Tulsa, in the county of Tulsa, in that state, for the forgery of several indorsements and signatures on certain obligations of the United States. The indictment was in four counts. On the 18th day of April, 1924, he entered a plea of guilty to the charges, and the imposition of sentence upon his said plea was postponed from time to time until the 13th day of March, 1925. The plea was entered before Judge Williams at Muskogee; on the 13th day of March, 1925, at Tulsa, the following sentence was imposed by Judge Kennamer:

"It is thereupon now by the court considered, ordered, and adjudged that said defendant C. C. Briggs be imprisoned in the city jail at Muskogee for a period of five months, and that he make his fine under the United States in the sum of $100 on each count, 1, 2, 3, 4, and stand committed until said fine is paid; sentence to run concurrent."

The petitioners Freeman, Lee, and Clark were jointly indicted in the District Court of the United States for the Eastern District of Oklahoma at Muskogee at the special March term, 1925. The indictment contained four counts. The first count was for conspiracy, willfully, wrongfully, corruptly, and feloniously to sell intoxicating beverages containing more than one-half of 1 per centum of alcohol by volume, and fit for use as a beverage. The second count charged them with a sale on the 12th day of February, 1925, in said Tulsa county. The third count charged them with a sale on the 14th day of February, 1925, in said county, and the fourth count charged them with a sale on the 20th day of February, 1925, in said county. On the 21st day of March, 1925 defendants pleaded guilty to certain counts of this indictment other than the conspiracy, under which no action has been taken, and received jail sentences. These sentences were imposed by Judge Kennamer at Tulsa.

On or about the 26th day of February, 1925, an information was filed against the petitioner Tilley in the District Court of the United States for the Eastern District of Oklahoma, at Tulsa, Okl., charging him in the first count with selling alcohol in violation of the National Prohibition Act (Comp. St. § 10138¼ et seq.) at said place on or about the 17th day of February, 1925, and in the second count for a like sale on or about the 21st day of February, 1925. On the 20th day of March, 1925, before Judge Kennamer, he entered a plea of guilty, and was sentenced to serve a term of six months in the city jail at Tulsa.

On or about the 26th day of February, 1925, at Tulsa, Tulsa county, Okla., an information was filed in the District Court there, as and for the Eastern District of Oklahoma, charging the petitioner J. I. (alias Whitey) Barnett with having sold whisky in the city and county of Tulsa on the 24th day of February, 1925. On the 20th day of March, 1925, before Judge Kennamer, he entered his plea of guilty and was

sentenced to serve a term of 6 months in the city jail of Tulsa at Tulsa. All of said proceedings, at all the dates hereinabove mentioned purported to have taken place in the Eastern District of Oklahoma.

By Act of Congress approved February 16, 1925 (Comp. St. §§ 1088–1088e), there was created within the state of Oklahoma a new district, designated as the Northern District of Oklahoma, which was carved out of the former Eastern and Western Districts within that state. Section 5 of the act (Comp. St. § 1088d) reads as follows:

"The jurisdiction and authority of the courts and officers of the Western District of Oklahoma, and of the courts and officers of the Eastern District of Oklahoma as heretofore divided between them by the order of the senior judge of the Circuit Court of Appeals for the Eighth Circuit of the United States over the territory embraced within said Northern District of Oklahoma, shall continue as heretofore until the organization of the District Court of said Northern District, and thereupon shall cease and determine, save and except in so far as the authority of the junior judge of said Eastern District is continued in him as judge of said Northern District, and save and except as to the authority expressly conferred by law on said courts, judges or officers, or any of them, to commence and proceed with the prosecution of crimes and offenses committed therein prior to the establishment of the said Northern District, and save and except as to any other authority expressly reserved to them or any of them under any law applicable in the case of the creation or change of the divisions or districts of District Courts of the United States."

The order of Judge Sanborn, to which reference is made in the act, contained the following language, upon which, in large part, these applications for habeas corpus are based:

"Because the offices and records of the United States marshal and the United States district attorney are at Muskogee, and it has been the practice to hold the sessions of the grand jury for the entire district at Muskogee, the judicial business of the entire district of convening and presiding over the grand jury and of directing its course, of receiving indictments, informations, and pleas of guilty, and pronouncing sentences upon pleas of guilty, of arraigning defendants, and taking their pleas of guilty, and allowing bail before hearing or trial, is

assigned to Hon. R. L. Williams, but the argument of law questions and the trial of criminal cases on motions, demurrers, and pleas shall be had in the division in which the offense is charged to have been committed."

Tulsa and Tulsa county are now situated in the Northern District of Oklahoma. Prior to the creation and organization of this district, Tulsa and Tulsa county were situated in the old Eastern District. A regular term of the District Court was there held, and this city and county were in the territorial division assigned to Judge Kennamer, Junior District Judge, by the order of Judge Sanborn, senior Circuit Judge, to which reference has been made. At the time the act creating the Northern District was approved Judge Kennamer was holding a special term of the District Court at Tulsa, and continued the session until late in March, and to a date subsequent to all the proceedings now under consideration.

The claims of the several petitioners differ in some respects, but the general claim is that, after the creation of the Northern District, which petitioners fix at the date of approval of the act by the President, Judge Kennamer had no authority to sit as a judge of the Eastern District, at least within the territory embraced within the boundaries of the new Northern District, and that any court then sitting at Tulsa was not a court of the Eastern District. It is further claimed that under this order of the senior Circuit Judge, as continued in effect by the act creating the Northern District, all indictments and informations, to be valid, must be returned at Muskogee, and such, together with pleas of guilty thereunder, must be received by Judge Williams, upon whom was conferred exclusive jurisdiction of and for pronouncing sentences upon pleas of guilty, arraigning defendants, and taking their pleas of guilty, and allowing bail before hearing or trial. It is therefore contended that, in any event, Judge Kennamer was without jurisdiction in these cases.

In determining the issues thus presented, it is necessary to construe both the act of Congress and the order of the senior Circuit Judge in the light of their terms and the evident purpose underlying them. Practical consideration must be given to the object to be attained, which was, of course, the due administration of law within the federal jurisdictions of the state of Oklahoma.

[1] The order of Judge Sanborn was made under section 23 of the Judicial Code, Compiled Statutes, Compact Edition, § 990, in order to effect a working division of the business of the Eastern District of Oklahoma between Judges Williams and Kennamer, who, it was recited, were unable themselves to agree upon that division. The order was not intended to deprive either judge of his general authority as a judge of the Eastern District of Oklahoma by appointment under the Constitution. Therefore that order cannot be regarded as establishing rigid limits of jurisdiction, which could, under no circumstances, be varied or enlarged. For example: If, with the consent of Judge Williams, after the making of that order, Judge Kennamer had sat in Muskogee, and there received indictments, informations, and pleas of guilty, had pronounced sentences upon such pleas, and otherwise had conducted the business of that court, could it be urged that he would have been without jurisdiction as a judge of the Eastern District so to do?

The order of Judge Sanborn had received a practical interpretation by the judges of the Eastern District which has a very substantial bearing upon the question now before us. Within each division created by that assignment there were several places of holding court, among them Muskogee, McAlester, Vinita, and Hugo in the First division, and Tulsa, Ada, Ardmore, and Chickasha in the Second division. Terms of court for the Eastern District were annually held at each of these places. It was conceded at the argument that at all times, while such courts were being held, indictments were there returned, informations filed, pleas of guilty received, and sentences pronounced by consent and acquiescence of both judges, just as had been the case before that order was issued. The jurisdiction of both court and judge in such cases was not, and could not be, questioned. The order of the court was treated as defining the division of work between the judges, for their guidance when necessity arose; but it might be and was relaxed in the interest of convenience and the discharge of the business of the courts in practice and by common consent.

So viewed, Judge Sanborn's order in no wise impairs the jurisdiction of Judge Kennamer, or the court over which he presided, so far as the Eastern District of Oklahoma is concerned. It is my judgment, therefore, that the act of Congress merely recognized and continued that order in force as thus construed and interpreted. Congress had in view the recognition of the territorial divisions created by that order for such period as it continued in force, and did not seek otherwise to change or limit the jurisdiction of the judges of the Eastern District while acting as such.

[2] We come next to a consideration of the effect of the act upon the creation and organization of the Northern District, affecting the jurisdiction more specifically of Judge Kennamer in the instant cases. The act of Congress approved February 16, 1925, in terms created the Northern District; but it is obvious that by section 5 thereof Congress intended to and did provide for the conduct of business, with respect to the prosecution of crimes and offenses, for the intermediate period between the authorization of the Northern District and the organization of the courts of that district for the disposal of business in them. It was not intended that during that period the administration of justice should be interrupted, and the courts of the territory involved be left either without jurisdiction or with a jurisdiction that was doubtful.

The entire scheme of this law, and of the laws theretofore existing, to which reference was made, supports this construction. Jurisdiction is preserved to such courts, and the judges thereof, "to commence and proceed with the prosecution of crimes and offenses committed therein prior to the establishment of the Northern District," and likewise specifically is preserved "any other authority expressly reserved to them, or any of them, under any law applicable in the case of the creation or change of the divisions or districts of District Courts of the United States." Section 59, Judicial Code, Compiled Statutes 1916, vol. 1, § 1041, to which reference is made, provides as follows:

"Whenever any new district or division has been or shall be established, or any county or territory has been or shall be transferred from one district or division to another district or division, prosecutions for crimes and offenses committed within such district, division, county, or territory prior to such transfer, shall be commenced and proceeded with the same as if such new district or division had not been created, or such county or territory had not been transferred, unless the court, upon the application of the defendant, shall order the cause to be removed to the new district or

division for trial. Civil actions pending at the time of the creation of any such district or division, or the transfer of any such county or territory, and arising within the district or division so created or the county or territory so transferred, shall be tried in the district or division as it existed at the time of the institution of the action, or in the district or division so created, or to which the county or territory is or shall be so transferred, as may be agreed upon by the parties, or as the court shall direct. The transfer of such prosecutions and actions shall be made in the manner provided in the section last preceding.''

It follows, from the language of the act itself, the references therein made to existing laws, and the evident purpose of the Congress in accordance with the logic of the situation generally, that the creation of the Northern District for the exercise of jurisdiction, and for the exclusion of the jurisdiction theretofore obtaining within its territorial limits, was suspended, and was not to become effective until the organization of its District Court; that organization took place on April 1, 1925, afer all the happenings herein recited. Until that time the jurisdiction of the judges of the Eastern District continued as before.

The petitioner Briggs was indicted at Tulsa, but entered his plea at Muskogee; he claims only that he was improperly sentenced. The other petitioners object to the presentation as well. All claim that the Northern District was created on the date of the approval of the act, and that thereafter Judge Kennamer, even if still a judge of the Eastern District, as held by this court in Bland, Petitioner, v. Kennamer (Original No. 274, C. C. A.) 6 F.(2d) 130, and Coatney, Petitioner, v. Kennamer (Original No. 275, C. C. A.) 6 F.(2d) 130, nevertheless had no authority to sit and pronounce judgment at Tulsa, within the alleged new Northern District. But, as we have seen, neither the order of the senior Circuit Judge nor the act itself, properly construed, impaired the jurisdiction of the court, nor served to render its judgments invalid. Wherefore the petitions for writs of habeas corpus must be denied, and the petitioners must be remanded to the custody of the marshal for the Eastern District of Oklahoma at Muskogee. Inasmuch, however, as said petitioners have been enlarged on bail, the execution of this order is suspended until the 20th of July, 1925, on which date said petitioners shall surrender themselves, upon pain of being in default.

The attention of the court has been called to the fact that some of the commitments issued in these cases are informal, and perhaps defective. It is ordered that new commitments issue in due form under the terms of the judgments entered.