JOHNSON et al. v. MANHATTAN RY. CO. et al.

No. 203.

Circuit Court of Appeals, Second Circuit. Dec. 7, 1932.

See, also, Ex parte Relmar Holding Co., 61 F.(2d) 941; 1 F. Supp. 820, 828.

Breed, Abbott & Morgan, of New York City (Charles H. Tuttle, Paris S. Russell, and W. K. Petigrue, all of New York City, of counsel), for American Brake Shoe & Foundry Co.

Hornblower, Miller, Miller & Boston, of New York City (Nathan L. Miller, W. W. Miller, Carl M. Owen, and Harold J. Gallagher, all of New York City, of counsel), for Dowling and others, receivers.

Charles Franklin, of New York City (Herbert Goldmark and Leonard H. Goldenson, both of New York City, of counsel), for Benjamin F. Johnson.

Boehm & Zeiger, of New York City (Louis Boehm, Samuel Zeiger, David Rasch, and Harry M. Edelstein, all of New York City, on the brief), for Lillian Boehm.

James L. Quackenbush, of New York City, for Interborough Rapid-Transit Co.

Dills, Muecke & Schelker, of New York City (Duane R. Dills and Walter G. Schelker, Jr., both of New York City, of counsel), for Manhattan Ry. Co.

Hughes, Schurman & Dwight, of New York City (Charles E. Hughes, Jr., and Allen S. Hubbard, both of New York City, of counsel), for William Roberts, receiver for Manhattan Ry. Co.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (John W. Davis and Edwin S. S. Sunderland, both of New York City, of counsel), for Committee Acting for Interborough 7 Per Cent. Secured Notes, etc.

Root, Clark & Buckner, of New York City (Elihu Root, Jr., Lloyd Paul Stryker, and Cloyd Laporte, all of New York City, of counsel), for Committee for Protection of Holders of Ten-Year 6 Per Cent. Gold Notes.

Davies, Auerbach & Cornell, of New York City (Edward Cornell and H. C. McCollom, both of New York City, of counsel), for Central Hanover Bank & Trust Co.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The appeals in question are from three decrees in the suit at bar; the first giving leave to the plaintiff, Johnson, to sue receivers of the Manhattan Railway Company

and the Interborough Railway Company appointed in another suit entitled American Brake Shoe Company v. Interborough Rapid Transit Company; the second, declaring void all decrees entered in that suit up to the time when the decree appealed from was entered, October 18th, 1932; the third, consolidating the two suits, 1 F. Supp. 809.

On August 25, 1932, the attorney for the Interborough Rapid Transit Company verified an affidavit in a suit, not yet begun, entitled American Brake Shoe Company v. Interborough Rapid Transit Company, alleging that in his judgment it would be undesirable to have a trust company appointed receiver in the cause and giving his reasons. Whether this was acted upon by the Senior Circuit Judge for the Second Circuit does not appear in the record; but it was filed the next day in the District Court. On the twenty-fifth the Senior Circuit Judge signed an order declaring that the public interest required the designation of a Circuit Judge to hold a District Court within the circuit, and designating himself to hold such a court beginning on that day, particularly to hear all questions arising in the American Brake Shoe Company suit. There was already an order of the same judge, dating from 1930, which designated him generally to hold terms of the District Court for the Southern District of New York without limitation of time. On the twenty-fifth the same judge signed another order, declaring that as a judge designated to hold the District Court, he did not assent to the existing distribution by the District Judges of the business of that court, and that, as Senior Circuit Judge, he directed that for thirty days applications for the appointment of receivers might be made to him. This was because of a rule of the District Court then existing, quoted in the margin.[1] These two orders were filed on August twenty-sixth, and on the same day the bill of the American Brake Shoe Company against the Interborough Rapid Transit Company. This in substance alleged that the plaintiff was a simple creditor of the defendant for supplies, and that it sued on behalf of itself and all others who might join. Further, that the defendant was operating a system of subways in the city of New York, under contracts with the city, and a system of elevated street railways, as lessee of the

Manhattan Street Railway Company. It was in large default as to its taxes; it had issued three series of funded obligations, two of them secured; it was liable upon an issue of Manhattan Railway bonds, and for certain rentals to the Manhattan shareholders; it was in controversy with the city as to items of their mutual accounts; it had a floating indebtedness of two and a half millions. While its assets "at a fair valuation exceed the amount of its liabilities," it was unable to meet its debts then due, together with those soon to fall due, and was exposed to a default upon a mortgage upon all its assets. If left to dismemberment by execution upon the claims of its creditors, it could not continue to perform its public duties, and there would result "wasteful strife and controversy," which could be prevented only in case the assets were sequestered by a court of equity for "equitable distribution among those entitled thereto." To this end it prayed that the court appoint receivers and enjoin all suits against it. The defendant appeared on the same day and consented to such a decree, and the Circuit Judge appointed receivers. The jurisdiction of the District Court over this cause of action depended upon the diversity of citizenship of the parties.

Thereafter various committees for the protection of different groups of creditors were allowed to become parties, and on September sixth, the Manhattan Railway Company, on its own petition alleging its similar financial embarrassment, also intervened, and a separate receiver was appointed for it at its request. The decree of August twenty-sixth was ex parte, except for the defendant's consent, and contained a rule nisi, returnable on September twenty-second, that "the parties" show cause why the receivership should not be continued pendente lite, "and upon the hearing any other creditor, the defendant or other party in interest may be heard." So far as appears no one objected upon the return day, and the receivership was made permanent by decree entered September twenty-eighth. A large number of other interlocutory decrees were passed by the Circuit Judge before the entry of the decree in the suit at bar of October eighteenth, which vacated them all; but their contents are not important here.

Meanwhile on September twenty-first Benjamin F. Johnson, a citizen of Kentucky and a minority shareholder of the Manhattan Railway Company, filed the bill at bar in the District Court against that company and its receiver, the Interborough Rapid Transit

---

[1] 11-a. All applications for the appointment of receivers in equity causes, in bankruptcy causes and any other cause (except where a receiver in bankruptcy may be appointed by a referee as provided in the Bankruptcy rules), shall be made to the judge assigned to hold the Bankruptcy and Motion Part of the business of the court and to no other judge.

Company and its receivers, the city of New York, and the American Brake Shoe Company. This was on behalf of himself and all other shareholders who might join, and was preceded by an order on Johnson's petition, giving him leave to sue the receivers appointed in the American Brake Shoe Company suit, granted by the District Judge then holding the motion part of that court, under the division of business agreed upon by all the regular District Judges of the Southern District of New York. Johnson's bill alleged that the American Brake Shoe Company's suit was beyond the jurisdiction of the Circuit Judge, and that all the decrees passed by him were void. This because the District Judges had provided for the division of business between them, and had promulgated two rules to that intent, of which one has been already quoted, and the other is to be found in the margin.[2] These it asserted forbade the action of the Circuit Judge, he not having been designated by the Senior District Judge under Rule 1-a, and not holding the motion term when he appointed the receivers, as required by Rule 11-a. On the merits, the bill set up a cause of suit by the Manhattan Company against the Interborough Rapid Transit Company upon certain claims, and a right to an accounting. It prayed the appointment of receivers and general relief.

On the same day, September twenty-first, Lillian Boehm was given leave by the District Judge holding the motion part, to intervene in Johnson's suit, which she did; she was a citizen of New York, and a shareholder of the Manhattan Railway Company; she was also a creditor of the Interborough Rapid Transit Company. On October third, she filed a supplemental bill, based upon the same general grounds as the American Brake Shoe Company's bill, except that she added that the proceedings in that suit were void, and asked as a preliminary to the appointment of receivers that those appointed by the Circuit Judge be vacated. Johnson also filed a petition supplemental to his original bill, not important to the controversy. A number of other interested parties intervened, but their presence does not affect the issues.

On the bills and two supporting petitions Johnson and Boehm procured rules nisi from the District Judge holding the motion term, returnable on October fourth, that the orders of the Circuit Judge of August twenty-fifth, designating himself to hold a District Court,

and giving him power to appoint receivers, should be vacated; also, his decree appointing receivers on August twenty-sixth, and his decree of September twenty-eighth, making them permanent, pendente lite. The petitions also prayed the appointment of other receivers and general relief. After a hearing upon the return day at which the parties to the American Brake Shoe Company bill appeared, the District Judge holding the motion term, by decree dated October eighteenth vacated all the decrees of the Circuit Judge in the American Brake Shoe Company suit. 1 F. Supp. 809. He refused to vacate the order of designation, and the order giving the Circuit Judge power to appoint receivers; and he also refused to appoint substituted receivers until an appeal was decided, if one were taken. Before entering this decree, he passed a decree ex mero motu, consolidating the suit at bar with that of the American Brake Shoe Company.

The controversy does not touch the substantial relief asked by any of the parties; all acknowledge that the two railways are in such financial straits that a court of equity must take over their assets, to prevent their dismemberment by execution, attachment and the like. The plaintiffs, and those who have intervened, ask for receivers, just as do the parties to the American Brake Shoe Company suit. The dispute touches merely who shall be the receivers, and who the judge to have charge of the receivership. The question at the outset is whether the rules deprive the Circuit Judge of jurisdiction to proceed under the order designating him to hold the District Court. Their language did indeed forbid him to do so; he was a designated judge, and he was not assigned to hold the motion term; he made clear by his order providing that applications for receivers might be made to him, that he did not mean to be bound by them. However, even though they be valid, and though his decrees might therefore be subject to reversal, these need not be so far without color of authority that they might be ignored as a futility, or vacated by another judge in another suit. If the rules altogether sheared him of his powers, we agree that the parties were not to be put to a phantom suit which would settle nothing, and on whose results they might not later rely. Suitors have an interest in the conclusion of their controversies, and we may assume that a judge of the same court, called upon to exercise his own jurisdiction, might, as an incident, clear from the records decrees which would otherwise appear to impede his own powers, though in fact they did not.

Collateral attacks upon proceedings which have no jurisdictional basis are permissible in many situations; e. g., St. Clair v. Cox, 106 U. S. 350, 1 S. Ct. 354, 27 L. Ed. 222; Simon v. Southern Railway, 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492, though we have found no decisions precisely in point here. Thus we think that these appeals do present the limited issue whether the rules, assuming that they are valid, go to the jurisdiction of the judge who disregards them. But we do not find it necessary to decide as to their validity, because, as we shall show, if directory only, that cannot be tested in a separate suit.

Though we are used to regard questions of jurisdiction as sharp and clear, the fact is otherwise. All valid rules of law are imperative; their violation is generally, though not always, a wrong for which in some form or other relief is usually open, if they result in substantial damage. But for obvious practical reasons not all errors go so far to the root as to make the whole proceeding a complete nullity; else the trouble and expense of litigation would go for nothing and controversy never end. Therefore, the law will not scrutinize too nicely a judge's warrant of authority; he may indeed have so little color of office as to stand like a mere interloper, but that is not ordinarily true, if, being duly qualified as a judge, some effort has been made to conform with the formal conditions on which his particular powers depend. The Supreme Court has several times refused to treat such conditions as essential to the validity of his acts. Ball v. U. S., 140 U. S. 118, 11 S. Ct. 761, 35 L. Ed. 377; McDowell v. U. S., 159 U. S. 596, 16 S. Ct. 111, 40 L. Ed. 271; Ex parte Ward, 173 U. S. 452, 19 S. Ct. 459, 43 L. Ed. 765. Though In re Manning, 139 U. S. 504, 11 S. Ct. 624, 35 L. Ed. 264, depended upon Wisconsin law, at least it is an instance of the same doctrine. Our own decision in Luhrig Collieries Co. v. Interstate C. & D. Co., 287 F. 711, is another; more authoritative indeed than the opinion recognized, since the bidder could scarcely have been held to his bid, if the decree directing the sale had been non coram judice. State ex rel. Buisson v. Lazarus, 33 La. Ann. 1425, holds the same even in the case of a constitutional prohibition. Cf. State v. Carroll, 38 Conn. 449, 9 Am. Rep. 409. It is not wholly clear how far the conditions upon a judge's qualifications may be absent and his acts still be immune from collateral attack. We have not that question before us; we mention the doctrine merely as showing the general indisposition of the law to demand of suitors any inquiry into the title of judges to their office, or into their authority to act in a particular cause.

■■ Here there was no infirmity in the authority of the Circuit Judge except through his disregard of the rules. The statute (Judicial Code § 18), 28 USCA § 22, expressly gave him "all the powers, and rights" of a District Judge in that district, with exceptions which enlarge rather than limit the latitude of the grant. He was for all purposes at least a District Judge while his designation lasted; and the rules of that court, taken at their widest, stripped him of his jurisdiction no further than if he were duly qualified as such. So viewed, the question is the same as though a District Judge had himself disregarded them, and appointed a receiver though at the time he was not holding the motion term. We cannot doubt that, however valid the rules may be, such a District Judge's decree would still be a judicial act, unassailable collaterally. The agreed distribution of business under section twenty-seven (28 USCA) is merely to promote concord and avoid conflict; it may be imperative, so far as it extends, but it does not go to the essence of the judge's power. That is derived from the statutes, and the equity rules. Section thirteen of Title 28, USCA and Equity Rule 1 (28 USCA § 723), which follows it, give a District Judge authority to pass all orders, "according to the rules and practice of the court;" compliance with every rule of court is not essential to the judge's jurisdiction, nor may his acts be ignored if they do not conform to all. There is a way to correct such errors which must be followed. Yet unless rules for the distribution of business stand on a different footing from rules in general, the decrees vacated were not the empty words of a mere intruder.

■ So far as the books show, there is no reason to suppose that they cut deeper into a judge's authority to act than others. Foley v. Utterback, 196 Iowa, 956, 195 N. W. 721. People v. Barbera, 78 Cal. App. 277, 248 P. 304, concerned not a rule but a statute, but it is for that reason more compelling. In Scranton Button Co. v. Neonlite Corp'n, 105 N. J. Eq. 708, 149 A. 369, Chancellor Walker did indeed vacate a decree made on the advice of a vice chancellor who had disregarded a rule for the distribution of business, but his decree was in the same suit, and the property had already come into the custody of the Court of Chancery in another suit. In Case v. U. S., 14 F.(2d) 510 (C. C. A. 8), although Judge Sanborn's order was made in pursuance of section 27 of title 28 (USCA),

it had been followed by a statute, temporarily imposing the allocation of business so made by him, until the Northern District of Oklahoma should be organized. Judge Van Valkenburgh, in Ex parte Briggs (D. C.) 15 F.(2d) 84, had earlier reached an opposite result, construing the act as no more than perpetuating the modus vivendi established by Judge Sanborn, and possibly that is the better view. But in any event Congress had, preparatory to the erection of the new district, set limits to the activities of the two District Judges; and if it was permissible to construe this as though the district were already in existence, and the powers of the judges territorially limited, the result followed. It is true that Judge Woodrough's opinion went further, and this is perhaps the reason for Judge Scott's concurrence only in the result. If so, judicial opinion in that circuit was at least equally divided as to the effect of the distribution order, taken by itself; and in any case the decision did not turn upon the point. There is thus little or no color of authority for saying that such rules stand in so exceptional a position. It seems to us that they do not. Certainly they cannot enlarge or lessen the jurisdiction of the court itself (Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboat Co., 263 U. S. 629, 635, 44 S. Ct. 220, 68 L. Ed. 480); and there appears to be no greater reason to say that they may do so as to the judges individually, whose powers are as much defined by statute. We think that they are only directory, and that their disregard was at most no more than error.

The appellees reply that the situation is like that where a successor has been appointed, and the superseded judge continues to act. U. S. v. Alexander (D. C.) 46 F. 728; Reed v. Bradford, 141 Ark. 201, 217 S. W. 11. The analogy presupposes that the rules as completely strip of power the judge who disregards them, as though he were out of office. To that we cannot agree, for the reasons we have just given. Indeed the decisions are not uniform even as to the acts of a judge who holds over after his successor is appointed. Carli v. Rhener, 27 Minn. 292, 7 N. W. 139; Hamlin v. Kassafer, 15 Or. 456, 15 P. 778, 3 Am. St. Rep. 176.

█ █ The vacating decree at bar properly refused to consider the validity of the order of designation of August twenty-fifth, but the appellees attack it here. They say that it appears both from the affidavit of Quackenbush, and from an opinion of the Circuit Judge in the American Brake Shoe Company suit, rendered after the vacating decree, that the only public interest supporting it was the fear that a trust company might be appointed receiver; and that this is not the kind of interest contemplated by the statute. Even so, the order conferred the statutory authority upon the designated judge. The power to designate, granted by 28 USCA § 22, is plainly administrative, and parties are not subject to the peril that everything decided may be upset, unless they can satisfy another court that there was adequate occasion for its exercise. The situation is the same as in People ex rel. Saranac Land & Timber Co. v. Extraordinary Special & Trial Term of Supreme Court, 220 N. Y. 487, 116 N. E. 384, for it does not matter that the condition is the "public interest," rather than the appointing judge's "judgment" of that interest. Section 22 was indeed originally the same as sections 17, 20 and 21 in this regard (28 USCA §§ 17, 20, 21), but the section was recast generally in 1922 (42 Stat. 839 [28 USCA § 22]), and the failure to retain the original phrase was certainly not intended to have such far-reaching consequences. It cannot be that the act of the Chief Justice, for example, or of a Circuit Justice, is to be subjected to a scrutiny when designating a Circuit Judge, to which it is not open in the case of a District Judge. The power can indeed be abused, but the remedy may be worse than the evil; it is not to the courts that the public must look for correction.

█ █ We have said that if the rules were directory only, we would not consider their validity in this suit, because that question must be raised by direct attack. Unless the appellees had no other recourse, this was the proper way. Grant v. A. B. Leach & Co., 280 U. S. 351, 359, 50 S. Ct. 107, 74 L. Ed. 470; Lively v. Picton, 218 F. 401, 408 (C. C. A. 6); Wagner Electric Mfg. Co. v. Lyndon, 282 F. 219 (C. C. A. 8); Blake v. District Court, 59 F.(2d) 78 (C. C. A. 9). They answer that they did have no other recourse, because they could not safely intervene in the American Brake Shoe Company suit under Equity Rule 37 (28 USCA § 723). That rule did not prevent them. It is true that any intervention must be "in subordination to, and in recognition of, the propriety of the main proceeding," but the appellees had no quarrel with that. They too wished a receivership, and indeed had no objection to "the propriety of the main proceeding," except for the judge who was to conduct it, and the receivers appointed. As to both, they had their opportunity to appear on the return day of the

rule nisi, September twenty-second, to ask for a removal of the cause to another judge, if the rules forbade the Circuit Judge to proceed, and for the appointment of other receivers. The bill at bar was filed on the twenty-first, a week before the decree passed continuing the receivers pendente lite. Nothing had happened, at least before the twenty-second, to their prejudice, and if it was wrong to proceed in the face of the rules, the objection could then have been raised.

Nor would such a course have deprived them of an appeal, for section 227 of title 28 USCA includes interlocutory decrees appointing receivers. The decree of August twenty-sixth was ex parte except as to the defendant which consented; as to all others their first opportunity to object was upon the return day. Pacific Northwest Packing Co. v. Allen, 109 F. 515 (C. C. A. 9); cf. Mitchell v. Lay, 48 F.(2d) 79, 84, 85 (C. C. A. 9); Kingsport Press v. Brief English Systems, 54 F.(2d) 497 (C. C. A. 2). Indeed the original appointment was expressly made temporary, and expired with the later decree; the receivers held thereafter only by appointment under that decree. Grand Beach Co. v. Gardner, 34 F.(2d) 836 (C. C. A. 6), touched a decree denying a motion to vacate the appointment of a receiver, which had originally been made on notice; it was in substance a decree on rehearing.

■ The consolidation decree did not change the status of the parties to the suit at bar, though perhaps it was meant to do so. Had it made them parties to the American Brake Shoe Company suit, the rules might be before us, even though only directory. But consolidation does not merge the suits; it is a mere matter of convenience in administration, to keep them in step. They remain as independent as before, and if one hangs for its jurisdiction upon the other, consolidation adds nothing; the dependent jurisdiction is as good without it. Toledo, etc., R. R. Co. v. Continental Trust Co., 95 F. 497, 506 (C. C. A. 6); Taylor v. Logan Trust Co., 289 F. 51, 53 (C. C. A. 8); Nolte v. Hudson Navigation Co., 11 F.(2d) 680, 682 (C. C. A. 2).

■ Finally, the appellees assert that the decrees are not appealable. The decree granting Johnson leave to sue the receivers, necessarily dissolved the injunction issued in the American Brake Shoe Company suit. True, it did so in another suit, but that can make no difference. The vacating decree likewise dissolved the injunctions granted by the decrees in the American Brake Shoe Company suit, and was pro tanto appealable under 28 USCA § 227. But it went much further, and seems to us, properly speaking, a final disposition. It vacated all that had been done theretofore, and must consistently have been followed by similar action, if more decrees were passed in the other suit. It did indeed leave the bill on file, but on condition that no proceedings might be taken under it, except by another judge. Certainly this was more than interlocutory.

There is more doubt as to the appealability of the consolidation decree. In so far as it may have attempted to effect an intervention of the parties to the suit at bar in the American Brake Shoe Company suit, along with consolidation, it was probably appealable in any case. Adler v. Seaman, 266 F. 828 (C. C. A. 8). This may have been its province; we are not sure. But in any case it seems to us that it must be within our jurisdiction now, since, if erroneous, there is no other means of correcting the error. It did not affect the substantial rights of the parties; there would be nothing to correct upon appeal from a final decree, at which for the first time interlocutory proceedings may be brought up. We could only say that though the suits should not have been consolidated, the damage was past and could not be corrected; the question would have become moot and would not survive. Meanwhile the parties would have been forced into a partnership to which they should not have been subjected. In such circumstances, in order to prevent the defeat of our appellate jurisdiction, we may have recourse to the writs appropriate to that situation. As we apprehend that it will not be necessary, we do not now decide which we should use, but content ourselves with saying that the decree seems to us wrong. As we understand that it was intended to be merely ancillary to the vacating decrees, upon the merits they will fall together. It is not therefore necessary to consider whether, standing alone, it was proper.

It appears to us therefore that, taking the appellees' argument at its face as to the validity of the rules, and their protest as to the propriety of the order of designation of August twenty-fifth, the decrees appealed from were erroneous. We have nothing to do now with the sufficiency of Johnson's original bill, or of Boehm's supplementary bill; we express no opinion as to either.

Decrees reversed.