173 U.S. 452 (1899)
Ex parte HENRY WARD.
No number.
Supreme Court of United States.
Submitted February 20, 1899.
Decided March 20, 1899.
ORIGINAL.
Mr. R.C. Garland and Mr. W.W. Wright, Jr., for the petitioner.
MR. CHIEF JUSTICE FULLER delivered the opinion of the court.
Ward was tried and found guilty before Edward R. Meek, Judge of the District Court of the United States for the Northern District of Texas, for "having in his possession counterfeit moulds," and was sentenced October 22, 1898, to *453 the penitentiary at Fort Leavenworth, Kansas, at hard labor for a period of one year and one day, and committed accordingly to the custody of the warden of said prison. He now makes application for leave to file a petition for habeas corpus on the ground that the sentence was void because Judge Meek was appointed July 13, 1898, after the adjournment of the previous session of the Senate of the United States, and commissioned by the President to hold office until the end of the next succeeding session of the Senate; and that from the date of the appointment and commission, until after the conviction and the sentence, there was no session of the Senate, though it is not denied that the appointment was afterwards confirmed.
By the act of February 9, 1898, 30 Stat. 240, c. 15, provision was made for an additional judge for the Northern Judicial District of the State of Texas, to be appointed by the President, by and with the advice of the Senate, and that when a vacancy in the office of the existing District Judge occurred, it should not be filled, so that thereafter there should be only one District Judge. It is stated that Judge Rector was District Judge of the Northern District of Texas when the statute was passed (February 9, 1898), that he died (April 9, 1898) before Judge Meek's appointment and while the Senate was still in session; and argued that the appointment could not be treated as one to fill the vacancy caused by Judge Rector's death, because that was forbidden by the act, and must be regarded as an appointment to the office of "additional District Judge" created thereby. Clause three of section two of article two of the Constitution provides that "the President shall have power to fill up all vacancies that may happen during the recess of the Senate, by granting commissions which shall expire at the end of their next session;" but it is insisted that the office in this instance was created during a session of the Senate, and that it could not be filled at all save by the concurrent action of the President and the Senate.
And it is further contended that the President could not during the recess of the Senate and without its concurrence, *454 by his commission invest an appointee with any portion of the judicial power of the United States Government as defined in article three of the Constitution, because that article requires that judges of the United States courts shall hold their offices during good behavior, and hence that no person can be appointed to such office for a less period and authorized to exercise any portion of the judicial power of the United States as therein defined.
We need not, however, consider the elaborate argument of counsel in this behalf, since we regard the well settled rule applicable here that where a court has jurisdiction of an offence, and of the accused, and the proceedings are otherwise regular, a conviction is lawful although the judge holding the court may be only an officer de facto; and that the validity of the title of such judge to the office, or his right to exercise the judicial functions, cannot be determined on a writ of habeas corpus.[1]
*455 In Griffin's case, Chase's Decisions, 364, 425, this was so ruled, and Mr. Chief Justice Chase said: "This subject received the consideration of the judges of the Supreme Court at the last term, with reference to this and kindred cases in this district, and I am authorized to say that they unanimously concur in the opinion that a person convicted by a judge de *456 facto, acting under color of office, though not de jure, and detained in custody in pursuance of his sentence, cannot be properly discharged upon habeas corpus." And to that effect see Sheehan's case, 122 Mass. 445; Fowler v. Bebee, 9 Mass. 231, 235; People v. Bangs, 24 Illinois, 184, 187; In re Burke; In re Manning, 76 Wisconsin, 357, 365; In re Manning, 139 U.S. 504; Church on Habeas Corpus, §§ 256, 257, 269, and cases cited.
In McDowell v. United States, 159 U.S. 596, one of the Circuit Judges in the Fourth Circuit designated the judge of one of the District Courts of North Carolina to hold a term in South Carolina, and his power to act was challenged by an accused on his trial and before sentence. The cause was carried to the Court of Appeals for that circuit, which certified questions to this court. We decided that whether existing statutes authorized the designation of the North Carolina District Judge to act as District Judge in South Carolina was immaterial, since he must be held to have been a judge de facto, if not de jure, and his actions as such so far as they affected other persons were not open to question. Cocke v. Halsey, 16 Pet. 71, 85, 86; Hussey v. Smith, 99 U.S. 20, 24; Norton v. Shelby County, 118 U.S. 425, 445; Ball v. United States, 140 U.S. 118, 128, 129.
The result of the authorities is that the title of a person acting with color of authority, even if he be not a good officer in point of law, cannot be collaterally attacked; and as Judge Meek acted, at least, under such color, we cannot enter on any discussion of propositions involving his title to the office he held.
Leave denied.
NOTES
[1] Note by Reporter.  The following historical facts have some bearing on the constitutional questions which the court was shut out from considering.

On the 1st day of July, 1795, the Senate having on the 26th day of the previous June "adjourned without day," the resignation by Mr. Jay of the office of Chief Justice of the United States took effect. President Washington wrote to Mr. Rutledge of South Carolina:
"I directed the Secretary of State to make you an official offer of this honorable appointment; to express to you my wish that it may be convenient and agreeable to you to accept it; to intimate in that case my desire, and the advantages that would attend your being in this city the first Monday in August, at which time the next session of the Supreme Court will commence; and to inform you that your commission as Chief Justice will take date on this day, July the 1st, when Mr. Jay's will cease, but that it would be detained here, to be presented to you on your arrival."
In the third volume of Dallas, under the head of "August Term, 1795," it is said: "A commission bearing date the 1st of July, 1795, was read, by which, during the recess of Congress, John Rutledge, Esquire, was appointed Chief Justice until the end of the next session of the Senate." Two important cases are reported in that volume as decided at this term. In the first, United States v. Peters, the decision is announced "by the court." In the second, Talbot v. Jansen, the justices give their opinions seriatim, Chief Justice Rutledge closing and announcing the decree.
The Senate met on the 9th of December, 1795, and the nomination of Mr. Rutledge "to be Chief Justice of the Supreme Court of the United States. vice John Jay, resigned" was sent in on the 10th of that month, and on the 15th of the same month the Senate refused to concur in it.
Rutledge's biographer says that the nomination was rejected because "when the Senate met in December his mind had become diseased;" but Jefferson, writing on the 31st of December, 1795, said: "The rejection of Mr. Rutledge by the Senate is a bold thing; because they cannot pretend any objection to him but his disapprobation of the [Jay's] treaty."
Busts of the deceased Chief Justices have been placed in the court room, through appropriations made by Congress for the purpose.
The first appropriation was made March 2, 1831, "for employing John Frazee to execute a bust of John Jay for the Supreme Court room, four hundred dollars." Frazee then resided in New York.
The second, made June 30, 1834, authorized a contract to be made "with a suitable American artist for the execution, in marble, and delivery in the room of the Supreme Court of the United States, a bust of the late Chief Justice Ellsworth," and appropriated eight hundred dollars therefor. The bust was made by H. Augur, then living in New Haven.
The third, made May 9, 1836, appropriated "for a marble bust of the late Chief Justice Marshall, five hundred dollars." The bust was executed by Hiram Powers, who lived in Washington from 1835 to 1837.
The fourth, made January 21, 1857, authorized the making of "a contract with a suitable artist for the execution, in marble, and delivery in the room of the Supreme Court of the United States, a bust of the late Chief Justice John Rutledge, and appropriated therefor eight hundred dollars." The bust was made by A. Galt.
The fifth, made January 29, 1874, authorized the Joint Committee on the Library "to procure and place in the room of the Supreme Court busts of the late Chief Justice Roger Brooke Taney, and of the late Salmon Portland Chase," and appropriated two thousand five hundred dollars for the purpose. The bust of Taney is by Rinehart, and that of Chase by Jones.
The latest appropriation, made March 2, 1889, was "to procure and place in the room of the Supreme Court of the United States a bust of the late Chief Justice, Morrison Remick Waite, one thousand five hundred dollars." The bust is by St. Gaudens of New York.
See also the Act of October 2, 1888, c. 1069, 25 Stat. 505, 547, appropriating for portraits of Rutledge, Ellsworth, and Waite, to be hung "on the robing room of the court with those of the other Chief Justices already there." Thus it appears that Washington appointed Rutledge Chief Justice ad interim; that the other members of the court acted with him as such without objection; and that both Houses of Congress have recognized him as one of the Chief Justices.