### SHORE v. SPLAIN.

(Court of Appeals of District of Columbia. Submitted April 2, 1919. Decided May 5, 1919.)

#### No. 3237.

1. HABEAS CORPUS ⬤⇒4, 27—COMMITMENT MUST BE WITHOUT POWER.
    A writ of habeas corpus will not issue, unless the order of commitment was utterly void for want of power, and the writ cannot be used to perform the office of a writ of error or appeal.

2. JUDGES ⬤⇒25(2)—AUTHORITY OF INTERIM JUDGE—CRIMINAL SENTENCE.
    A municipal court judge designated for police court duty during the absence or disability of the regular police court judges, pursuant to Act Feb. 17, 1909, is not disqualified from passing sentence upon a prisoner he tried by the fact that the regular police court judges resumed their duties between trial and date of sentence.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. HABEAS CORPUS ⊙⇒54—PLEADING—SUFFICIENCY.

Allegations in habeas corpus proceeding that plaintiff was sentenced by a municipal court judge, who had been designated as a substitute for police court judges, and that at the time of the sentence the two regular judges were exercising their functions, is insufficient to show that the judge imposing the sentence had previously surrendered his position to one of the regular judges.

4. HABEAS CORPUS ⊙⇒30(3)—SENTENCE—TECHNICAL ERROR.

Under Act Cong. Feb. 26, 1919, requiring appellate courts to disregard technicalities not affecting substantial rights, etc., a habeas corpus writ will not issue to release a prisoner merely because he was sentenced by a municipal court judge designated to temporarily preside in the police court, instead of by one of the regular police court judges, who had resumed their duties.

Appeal from the Supreme Court of the District of Columbia.

Habeas corpus proceeding by Frank Shore against Maurice Splain. From a judgment dismissing the petition, plaintiff appeals. Affirmed.

Alexander Wolf, of New York City, and James L. Pugh, Jr., of Washington, D. C., for appellant.

John E. Laskey, U. S. Atty., and Bolitha J. Laws and Paul B. Cromelin, Asst. U. S. Attys., all of Washington, D. C., for appellee.

SMYTH, Chief Justice. This is an appeal from a decision of the Supreme Court of the District dismissing Shore's application for a writ of habeas corpus. Shore had been tried and convicted in the police court of betting on horse races in violation of the statute. His conviction took place in July, 1918. Hon. John P. McMahon, a judge of the municipal court, presided at the trial under a designation by the Chief Justice of the Supreme Court, made in pursuance of an act of Congress approved February 17, 1909 (35 Stat. 624, c. 134), and which authorized him "to discharge the duties of either of the judges of the police court during their sickness, vacation or disability until the 1st of January, A. D. 1919." At the time of the trial one of the regular judges of the police court was absent.

In due time a motion for a new trial was filed by Shore and argued before Judge McMahon. At the request of Shore, September 7th was fixed as the day on which the court should pass upon the motion, and, in the event that it was overruled, sentence the defendant. On that date Judge McMahon overruled the motion, and, without any objection by Shore, sentenced him to serve a term of 90 days in jail and pay a fine. Judge Hardison, one of the regular judges of the police court, on October 7th ordered that Shore be taken into custody by the marshal for the purpose of being removed to the jail, that he might serve his sentence. The marshal, in obedience to this order, took him in charge. Thereupon Shore sued out this writ, claiming that he was illegally restrained of his liberty. It appears, without contradiction, that at the time Judge McMahon sentenced Shore the two regular police judges were in court discharging their duties.

Appellant urges that when Judge McMahon pronounced the sentence he was neither a judge de jure or de facto, and therefore that

the sentence was void; but he says that either of the regular judges of the police court had legal authority to sentence him. If this be correct, was not the order of Judge Hardison, one of the regular judges, by which the marshal took the appellant into custody, valid? This order was made for the purpose of executing the sentence of Judge McMahon. Thus Judge Hardison in effect made that sentence his own and took steps to enforce it. We suggest, but do not decide, the question.

[1-3] It is settled law that—

"Unless the order of commitment was utterly void for want of power, this application must be denied. The writ of habeas corpus is not to be used to perform the office of a writ of error or appeal." In re Tyler, 149 U. S. 164, 180, 13 Sup. Ct. 785, 789 (37 L. Ed. 689).

When applied to the case at bar, this principle means, as we understand it, that, if the act of Congress under which Judge McMahon was selected affords any warrant for deciding that he was authorized to impose the sentence, the writ must be refused. That act says:

"In case of sickness, absence, disability, expiration of term of service of or death of either of the judges of the police court or of the juvenile court, any one of the justices of the Supreme Court of the District of Columbia may designate one of the judges of the municipal court to discharge the duties of said judges until such disability be removed or vacancy filled. The justice so designated shall take the same oath prescribed for these judges."

According to the appellant the moment the disability of the regular judge is removed, the power of the designated or special judge ceases, even though he may be in the midst of an important trial, thus rendering nugatory all that had been done in the trial up to that time. Such a construction would lead to great public inconvenience and should not be adopted if it can be avoided. Hawaii v. Mankichi, 190 U. S. 197, 23 Sup. Ct. 787, 47 L. Ed. 1016; Lau Ow Bew v. United States, 144 U. S. 47, 12 Sup. Ct. 517, 36 L. Ed. 340; Bird v. United States, 187 U. S. 118, 124, 23 Sup. Ct. 42, 47 L. Ed. 100.

It was undoubtedly the intention of Congress in providing for a temporary judge, that he should perform the duties of the position during his incumbency and complete any work entered upon by him before he withdrew from the place; otherwise, as in the case of a trial, much of his effort might come to naught if the return to duty of the regular judge had the effect of terminating his authority, and thus the purpose of Congress in providing for a substitute judge would be defeated in many cases. The fact that this interpretation may authorize the presence temporarily of three de jure judges of the court does not militate against it, for Congress has the power to provide for as many judges of the court as it may think proper.

A statute quite similar to the one we are examining has been the subject of juridical determination in several states. State v. Stevenson, 64 W. Va. 392, 62 S. E. 688, 689, 19 L. R. A. (N. S.) 713; State v. Bobbitt, 215 Mo. 10, 30, 114 S. W. 511; Bohannon v. Tabbin (Ky.) 76 S. W. 46, 49; Bedford v. Stone, 43 Tex. Civ. App. 200, 95 S. W. 1086; State ex rel. v. Williams, 136 Mo. App. 330, 336, 117 S. W. 618; Mayer v. Haggerty, 138 Ind. 628, 38 N. E. 42; Fisher

v. Puget Sound Brick, etc., Co., 34 Wash. 578, 76 Pac. 107. In State v. Stevenson, a criminal case involving the death sentence, the defendant pleaded guilty before a special judge who took time thereafter to consider of his judgment. While he was doing so the regular judge returned, assumed the bench, and sentenced the prisoner. The statute under which the special judge was appointed provided that he should serve in the absence of the regular judge. It was argued that the moment the regular judge appeared the authority of the special judge ceased; therefore, that the sentence by the regular judge was valid. But the court, after reviewing the decisions of its own and other states upon the question, ruled:

"That the return of the regular judge would not oust the special judge of jurisdiction to try and finally dispose of any case begun before him."

The Kentucky court in the Bohannon Case, supra, said:

"The fact that the regular judge returned before the case was finally disposed of by the special judge in no wise nullified the jurisdiction of the latter. It would create inextricable confusion if, after a special judge, elected because of the absence of the regular judge, had commenced the trial of a case, his jurisdiction to further try it should be ousted by the return of the regular judge. It needs no argument to demonstrate the hardship and expense to litigants which would arise upon the adoption of such a principle."

In the event of a vacancy in this court on account of the absence of one of its members, the remaining members are authorized to designate a justice of the Supreme Court of the district to sit in his place "while such vacancy * * * shall exist." Code, § 225. Between the submission of a case and its final disposition weeks may intervene, and if during that period the justice whose place the additional justice had taken must remain away from the court, although ready to act, it would greatly impede the dispatch of the public business here. Ever since the organization of the court it has been the practice for the additional justice to participate in the opinions and judgments in cases argued before the court while he was on the bench, although the regular justice whose place he had been appointed to fill had returned to his duties before the judgments were announced. The right of the additional justice to do so has never been questioned by any one so far as we know.

We think Judge McMahon was a de jure judge when he sentenced Shore; but, if not, he was at least a de facto one. He claimed the right to act as one of the judges of an existing court by virtue of the appointment made by the Chief Justice, who, under the statute, had the right to make it. He had taken the oath of office some time before, and for quite awhile had been exercising the functions of a judge of the court by virtue of the appointment. The officers of the court recognized him as one of its judges. No one, not even the appellant, questioned his right to the power which he assumed. He had entered the position rightfully, and, so far as this record shows, he continued in it up to the time when he pronounced the sentence. It is alleged that at the time of the sentence the two regular judges were in court exercising their functions, and from this it might be inferred that he had surrendered his position to one of them; but in a

proceeding of this kind, where it is claimed that his act was void, mere inference is not enough to establish the necessary fact. There should be a direct allegation that he had surrendered the place, and this is wanting. "The result of the authorities is," says the Supreme Court of the United States in Ex parte Henry Ward, 173 U. S. 452, 456, 19 Sup. Ct. 459, 460 (43 L. Ed. 765) that "the title of a person acting with color of authority, even if he be not a good officer in point of law, cannot be collaterally attacked." Judge McMahon was certainly acting under color of authority.

In Smith v. Sullivan, 33 Wash. 30, 73 Pac. 793, the statute provided that, in case of the temporary absence or disability of the police judge to act, the mayor should appoint a police judge pro tempore. Under this authority the mayor designated one Miller. The acting judge tried and sentenced Smith for a violation of a city ordinance. At that time the regular police judge was personally within the territory over which the police judge had exclusive jurisdiction, and was not incapacitated from discharging his judicial functions. In view of this, it was argued that Miller's act in sentencing Smith was void. The court rejected the contention, and ruled that Miller was a de facto, if not a de jure, judge.

[4] Moreover, the appellant in his brief argues that "either of the regularly appointed judges of the police court had the legal authority to impose the sentence." His complaint is, not that he should not have been sentenced, but that the act should have been performed by another person. This savors of a technicality involving no substantial right. By a recent act of Congress, approved February 26, 1919 (40 Stat. 1181, c. 48), it is provided that on appeal:

"In any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

This is a command to which federal courts must listen, and it supplies an additional reason for holding that the court below committed no error in dismissing the petition of the appellant, Shore, for the writ of habeas corpus.

The judgment is affirmed, with costs.

Affirmed.