**John LEARY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15290.**

United States Court of Appeals
Ninth Circuit.

May 18, 1959.

Dissenting Opinion June 30, 1959.

**624**

Fay Stender and Marvin Stender, San Jose, Cal., for appellant.

Robert H. Schnacke, U. S. Atty., Lynn Gillard, John H. Riordan, Jr., Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before POPE, STEPHENS, FEE, CHAMBERS, BARNES, HAMLEY, HAMLIN, and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

Appellant was sentenced to a period of six years in a federal penitentiary after conviction by a jury on an indictment charging him with knowing possession of property stolen from a vessel engaged in interstate commerce.[1] No question is raised on this appeal as to the evidentiary basis of the conviction or sentence. The record before this Court is sufficient to sustain a verdict of guilty, if the proceedings in the district court were proper.

The single question raised here is the validity of the organization of the court on July 31st, 1956, the day upon which the proceedings opened. The proceedings occurred in San Francisco, within one of the courtrooms regularly used by the United States District Court for the Northern District of California, Southern Division. The regular jury venire were present.

Presiding was a duly and regularly appointed, commissioned, and sworn federal judge of the District Court of New York located within the Second Circuit. He had been duly and regularly assigned by proper authority "to hold the District Court in the Northern District of California during the period beginning August 1, 1956, and ending August 31, 1956."

This case of United States v. Leary had been originally set down on July 3,

1956 for a jury trial on July 30, 1956 by the District Judge of the United States District Court for the Northern District of California then presiding over criminal cases in the Southern Division.[2] On July 30th, 1956, the Chief Judge of that same Northern District of California, then presiding over the criminal calendar, had duly and regularly continued the trial of the case before a jury to July 31st, 1956.

Reporting for his judicial duties one day early, and on July 31st, 1956, to Chief Judge Louis Goodman of the United States District Court in San Francisco, the New York District Judge, with the apparent or express consent of Judge Goodman, was assigned a courtroom in which to preside over a regular session of the Northern California District Court. On that same July 31st, 1956, the court's docket shows that case No. 34992, United States v. John Leary, was "Ord. assigned to J.——— [specifying the New York Judge by name] for Jury Trial. Goodman." The trial of the charge against Leary proceeded. Twelve persons were found qualified and placed in the jury box. The customary form of oath was administered to them as to a jury panel. The judge presiding thereafter, and before the introduction of any evidence, suggested to counsel after the jury had left the room that his official designation called for him to hold court in the Northern District of California commencing August 1, 1956. He said he could get the assignment amended by a nunc pro tunc order, so as to authorize him to hold court on July 31, 1956. He said, "Officially I am supposed to start tomorrow morning, but actually we selected the jury and are starting today." He then asked defendant to waive any contention "with respect to my having started a day early" and added "that actually the trial is commenced one day

1. 18 U.S.C. § 659.

2. At the en banc hearing of this matter, the government moved to augment the record by filing with this Court a copy of the full "Criminal Docket" relating to this case, as it appears in the records of said United States District Court for the Northern District of California, certified by the clerk of that court. That motion to augment the record, then taken under advisement, has heretofore been granted.

prior to my official designation to sit in this District Court."

The attorney for defendant stated on behalf of defendant that he would waive any defects and that the procedure would redound to the advantage of defendant since he had been in custody a considerable time. The judge presiding then asked defendant if he understood, if he was agreeable, and if he waived any objection, to which the latter responded that he did. Thereafter, on that same day, an opening statement was made by the government attorney, the defense reserving its statement to the end of the case. Three witnesses were then sworn seriatim and each testified.

On August 1st and 2nd, 1956, the proceeding was continued before the same twelve persons and the same judge. The twelve persons returned a verdict of guilty. Judgment was entered thereon.

A sentence of Leary to six years' imprisonment followed on August 16, 1956.

 There can be no question that the United States District Court for the Northern District of California, Southern Division, was the proper court in which to try the appellant. That court, *qua* court, had subject matter jurisdiction of the offense charged. Whether the visiting judge was on July 31st, 1956, a proper judge to hold that trial in that court is the question crucial to this appeal.

Whatever powers and authority the New York judge had to sit in San Francisco arose out of six factors: (a) His judicial capacity; (b) the statute authorizing his assignment, 28 U.S.C. § 292 (c);[3] (c) the Chief Justice's designation[4] to sit in California; (d) the statute defining his powers and duties on such assignment, 28 U.S.C. § 296;[5] (e)

3. 28 U.S.C. § 292(c) states: "The Chief Justice of the United States may designate and assign temporarily a district judge of one circuit for service in another circuit, either in a district court or court of appeals, upon presentation of a certificate of necessity by the chief judge or circuit justice of the circuit wherein the need arises."

4. The designation is in part as follows:
"Designation of District Judge for Service in Another Circuit
"The Chief Judge of the Ninth Circuit having certified that there is a necessity for the assignment of a judge from another circuit to perform the duties of district judge and hold a district court in the Northern District of California; and that the Chief Judge of the Second Circuit having consented to the designation and assignment of . . . United States District Judge for the Southern District of New York, in that Circuit, to hold the District Court in the Northern District of California during the period beginning August 1, 1956, and ending August 31, 1956, now, therefore, pursuant to the authority vested in me by Title 28, United States Code, Section 292(c), I do hereby designate and assign [him] . . . to perform the duties of district judge and hold a district court in the Northern District of California during the period beginning August 1, 1956, and ending August 31, 1956, and for such

further time as may be required to complete unfinished business.
"Earl Warren,
Chief Justice of the United States.
"Dated, Washington, D. C., July 13, 1956.
"Filed June 19, 1956,
C. W. Calbreath, Clerk"

5. 28 U.S.C. § 296: "A justice or judge shall discharge, during the period of his designation and assignment, all judicial duties for which he is designated and assigned. He may be required to perform any duty which might be required of a judge of the court or district or circuit to which he is designated and assigned.
"Such justice or judge shall have all the powers of a judge of the court, circuit or district to which he is designated and assigned, except the power to appoint any person to a statutory position or to designate permanently a depositary of funds or a newspaper for publication of legal notices.
"A justice or judge who has sat by designation and assignment in another district or circuit may, notwithstanding his absence from such district or circuit or the expiration of the period of his designation and assignment, decide or join in the decision and final disposition of all matters submitted to him during such period and in the consideration and disposition of applications for rehearing or further proceedings in such matters."

the assignment of the case to him by the Chief Judge of the District Court in California; and (f) whether or not he was, if not a de jure judge, a de facto judge the first day of the trial.

No question is here raised as to the judge's complete authority to act in his judicial capacity within his district court in New York, and we need not consider it here, save to state the fact that he was so authorized and had been for several years.[6]

Nor is any question here raised that any of the statutory conditions respecting the designation and assignment were not complied with (excepting for the moment the date when the assigned duties were to commence). We must, and are entitled, to assume that the consent of the Chief Judge, or the Judicial Council, of the Second Circuit had been obtained; and that the designation and assignment had been filed with the clerks of the courts from which and to which made.[7] The law requires this, and it is presumed the law was obeyed.

There likewise exists no question as to the authority of Congress generally to enact statutes authorizing assignment of a federal judge from one area to another. See, Lamar v. United States, 1916, 241 U.S. 103, 117–118, 36 S.Ct. 535, 60 L.Ed. 912; McDowell v. United States, 1895, 159 U.S. 596, 598–599, 16 S.Ct. 111, 40 L.Ed. 271.

The district courts of the United States derive their power, not from the Constitution, but from the statutory enactments of Congress: "District courts are solely the creation of statute, and the place in which a judge thereof may exercise jurisdiction is subject absolutely to the control of congress." McDowell v. United States, supra [16 S.Ct. 112].

The purposes of § 292(c) and § 296 are to aid litigants to avoid that of which defendants in criminal cases complain most loudly—delays in trial. To accomplish this, and to make the work load more even throughout the country, was the purpose behind the legislation.[8] To aid in the accomplishment of that purpose, we should, where construction is necessary, liberally construe the statutes. S. E. C. v. C. M. Joiner Leasing Corp., 1943, 320 U.S. 344, 350–351, 64 S.Ct. 120, 88 L.Ed. 88; Stewart v. Kahn, 1870, 11 Wall 493, 505, 78 U.S. 493, 505, 20 L.Ed. 176; Seasongood v. Commissioner of Internal Revenue, 6 Cir., 1955, 227 F.2d 907; Adler v. Northern Hotel Co., 7 Cir., 1949, 175 F.2d 619; United States v. Public Utilities Comm., 1945, 80 U.S. App.D.C. 227, 151 F.2d 609; Binkley Mining Co. v. Wheeler, 8 Cir., 1943, 133 F.2d 863, 871.

Appellant urges that the Frad[9] case is controlling, and requires reversal here. In Frad v. Kelly, supra, Judge Inch, a duly appointed District Judge of the Eastern District of New York, was regularly assigned to the Southern District of New York. On this assignment, he regularly tried Frad before a jury. Upon conviction, the judge sentenced Frad to imprisonment on one indictment and suspended imposition of sentence on two other indictments for a definite period. When Frad had served sentence on the first indictment and before the probation period expired, he petitioned Judge Inch for discharge. The United States Attorney for the Southern District stipulated that Judge Inch might hear a subsequent motion in the Southern District, and the probation officer of that District, by appearing at a hearing before Judge Inch in the Eastern District, gave implied consent. Judge Inch entered an order

---

6. Register, Department of Justice and the Courts of the United States 1959, p. 86.

7. 28 U.S.C. § 295.

8. A committee report covering a similar provision says:
 "These provisions provide a method whereby the overall manpower of the

Federal judiciary may be utilized to meet specific congested calendars." H.R.Rep. No. 2348, 84th Cong., 2d Sess., 1956 U.S.Code Congressional and Administrative News, at page 3123.

9. Frad v. Kelly, 1937, 302 U.S. 312, 58 S.Ct. 188, 191, 82 L.Ed. 282.

revoking probation, discharging Frad from further supervision and terminating the proceedings against him.

About a year later a judge of the Southern District authorized a warrant upon a charge of violation of the terms of the probation. Frad surrendered himself to the marshal, and later a judge of the Southern District granted habeas corpus as to Frad on the theory that the discharge by Judge Inch was valid. The court of appeals reversed, holding the Inch order void. Kelly v. United States ex rel. Frad, 2 Cir., 1937, 89 F.2d 866. The United States Supreme Court affirmed the court of appeals, holding that the discharge of Frad by Judge Inch was null and void since the judge had no authority under the assignment statute "to hear a new matter even though that new matter may arise in the same case."

Thus in the Frad case, a judge who had once been a regularly designated judge in one district and had decided a case therein, attempted to decide, in *another district* (in which he regularly sat), *a new matter* arising in the same case. He purported to act on a matter in a district where such matter was not then pending. This differs from the instant case where the assigned judge proposed to act in a matter which was then properly within the court's subject matter jurisdiction.

In Frad the critical decision to terminate probation was rendered by a judge of the United States District Court for the Eastern District of New York. The question presented to the Supreme Court was whether a judge of the District Court for the Eastern District of New York, *holding court in the Eastern District,* could enter an order which only a judge (by appointment or assignment) of the District Court for the Southern District of New York had the statutory authority to enter. The Court rejected the theory that under a section similar to the last sentence of § 296, the presentation of a motion to terminate probation came within the assigned judge's power to "decide or join in the decision and final disposition *of all matters sub-mitted to him during such period* and for rehearing or further proceedings in *such* matters." [Emphasis added.] The Court held instead that the matter submitted was *new* matter and therefore was required under the probation statute to be submitted to the *court* in which defendant had been sentenced. The latter court was, of course, the District Court for the Southern District of New York. A judge sitting by assignment in the Southern District is a judge of that district; but the same judge sitting back in his own district is not a judge of the Southern District and he could not, after his assignment had terminated, purport to act on a new matter relative to a case he decided during the period of his assignment.

In the instant case, however, the *court* which sought to exercise jurisdiction over appellant was the proper court. And the judge who empaneled the jury and conducted the proceeding was a duly sworn United States District Judge, a judicial officer moving under a proper and statutorily authorized designation to hold court in this Circuit in the Northern District of California, complete in all respects save as to the date he was to commence. He was, at the very least, a judge de facto of that court on July 31, 1956, the day before his designation authorized him to act. The defect existing was a mere formal defect in the date of his assignment. Such defects uniformly have been held no bar to the good faith exercise of judicial office by one lawfully vested with the powers of a judge.

"Though we are used to regard questions of jurisdiction as sharp and clear, the fact is otherwise. All valid rules of law are imperative; their violation is generally, though not always, a wrong for which in some form or other relief is usually open, if they result in substantial damage. But for obvious practical reasons not all errors go so far to the root as to make the whole proceeding a complete nullity; else the trouble and expense of litigation would go for nothing and contro-

versy never end. Therefore, the law will not scrutinize too nicely a judge's warrant of authority; he may indeed have so little color of office as to stand like a mere interloper, but that is not ordinarily true, if, being duly qualified as a judge, some effort has been made to conform with the formal conditions on which his particular powers depend. The Supreme Court has several times refused to treat such conditions as essential to the validity of his acts. Ball v. United States, 140 U.S. 118, 11 S.Ct. 761, 35 L.Ed. 377; McDowell v. United States, 159 U. S. 596, 16 S.Ct. 111, 40 L.Ed. 271; Ex Parte Ward, 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765. * * * It is not wholly clear how far the conditions upon a judge's qualifications may be absent and his acts still be immune from collateral attack. We have not that question before us; we mention the doctrine merely as showing the general indisposition of the law to demand of suitors any inquiry into the title of judges to their office, or into their authority to act in a particular cause."

L. Hand, J., in Johnson v. Manhattan Ry. Co., 2 Cir., 1932, 61 F.2d 934, 938.

There is yet another reason why this appellant is in no position to complain about the propriety of his trial in the court below. As we construe § 292(c), it provides for the administrative performance by the Chief Justice of what amounts to little more than a ministerial act. That section does not impose strict jurisdictional requirements. It seeks only to encourage and enhance the speedy and efficient administration of justice in the various courts of the United States. To this end, and as the judge below noted, a nunc pro tunc order could have been obtained by the mere exchange of communication between San Francisco, New York, and Washington, D. C.[10] The fully informed and intelligent waiver of such formal requirement by the defend-

ant, his counsel, and counsel for the government was sufficient to perform, in effect, the office of such an order. See, Rakes v. United States, 4 Cir., 1947, 163 F.2d 771. Further, such conduct was sufficient to invest the judge below with that element of good faith required for invocation of the de facto judge doctrine. "The parties having consented to the hearing of the motion by Judge Hutcheson [sitting without proper designation], we treat his finding as though it had been made after a proper statutory designation." Rakes v. United States, supra, 163 F.2d at page 773.

A broad view of the statute is particularly appropriate where, as here, the defendant was adequately represented by competent counsel, where no rights have been denied him, and no prejudice against the defendant appears. Neither the requirements of justice nor the interests of this appellant require a contrary result.

The judgment below is affirmed.

STEPHENS, Circuit Judge (concurring).

I concur in Judge BARNES' opinion as amended.

However, I have been, and yet am, troubled with the Frad v. Kelly, 302 U. S. 312, 58 S.Ct. 188, 82 L.Ed. 282, opinion. I agree that the judgment should be affirmed upon the timid ground that the court was *de facto* at least. Without further study, I cannot say that the judgment should be affirmed solely upon that ground.

CHAMBERS, Circuit Judge (concurring).

While I concur in the foregoing opinion, I do state that I would take a much different view of the case if there had not been an intelligent and free waiver by the defendant and his counsel of the defect in the trial judge's assignment to the Northern District of California.

10. 28 U.S.C. § 295.

JAMES ALGER FEE, Circuit Judge (dissenting).

The unanimous concurrence of all other members of this Court in the foregoing opinion gives it great weight. However, it is wrong both in the result and in the reasoning. Since it may be used to deny due process to some other defendant or perchance to permit a federal court to be held by an actual interloper,[1] it is necessary to point out the errors.

The process whereby a judge of one federal district can be assigned and permitted to exercise jurisdiction in a District Court of a different district is highly technical and is clearly defined by the Act of Congress. No federal judge can exercise his powers in a District Court of another Circuit unless these requirements be followed to the letter. The legislation is a grant of judicial power. All the provisos thereof are conditions precedent to its exercise. The judge in the instant case deliberately attempted to exercise this authority at a date when neither the Act of Congress nor the written assignment conferred the power upon him. His act was void.

There has been an attempt to distinguish the Frad case.[2] There, as here, the District Court of the Southern District of New York had jurisdiction of the person of the defendant and of the proceeding. There is no dispute of this fact in either case. But there the assignment of Judge Inch had expired and he could no longer exercise the power of the District Court of the Southern District of New York, which he assumed to do.[3] The court was not properly constituted

for the purpose, and his act was void. The Supreme Court so held. No distinction can be drawn between the act of a judge after the expiration of his assignment and his act before the date expressly designated in the documents of assignment. The power to act was not conferred before the designated date.

It is thus demonstrated that the person presiding was not a judge de jure of the District Court of the Northern District of California at the opening of the trial. The opinion seems to intimate that he was a judge de facto. This is error by definition. A de facto judge is one who, with claim of right and color of authority, exercises jurisdiction. In this case, there was a deliberate attempt to exercise authority in the face of the knowledge that the assignment did not confer the power to act until a later time.

Color of authority and claim of right do not depend upon the good faith of the individual, but upon the existence of facts which give surface validity to the assumption of power. Here no such facts were present. The written assignment negatived both a claim of right and color of authority.

It is said that Leary was guilty and was found guilty by the jury. Owing to the fact that there was no person qualified to hold court as judge upon that date, the jury was not impaneled according to law. Jeopardy did not attach. The United States District Court for the Northern District of California did not acquire jurisdiction of the person of Leary during this moot proceeding. Leary may be guilty and may not appeal to the sympathy of the judges, but he is

1. Undoubtedly, here the judge acted with good intention in the belief that lack of jurisdiction would be cured by the supposed acquiescence of defendant.

2. Frad v. Kelly, 302 U.S. 312, 58 S.Ct. 188, 82 L.Ed. 282. See majority opinion.

3. The vital parallel between the Frad case and the case at bar is pointed out in the final brief of appellant: "However, the Court in Frad pointed out that the order complained of was headed with the title of the Southern District Court and that

such order was filed in the office of the Clerk of the Southern District. Thus, even though the matter was actually heard within the territorial jurisdiction of the Eastern District, the Judge purported to be acting, at the time, as a Judge of the Southern District acting to complete a pending matter. This Court's interpretation of the Frad case would reduce the holding in that case to a requirement that a cause be heard in a particular room."

entitled to be tried by a duly constituted court and to be accorded due process of law. The Supreme Court of the United States has consistently held that jurisdiction of the tribunal has been lost by defects less glaring. If this point were raised in a habeas corpus proceeding years after the event, judgment should be vacated. Leary was not accorded due process of law.

This proceeding is not habeas corpus. It is an appeal. Error as flagrant as this, and violative of due process, should be corrected by the court of its own motion,[4] irrespective of action by the party. Error may be cured by consent of defendant. It is said Leary cured the defect by consenting. A review of the record shows that he did not knowingly consent to a trial by a court which was not duly constituted and before a body of persons not authorized to act as jurors. Even if the defect were only error, no curative consent is present.

The fatal defect is that his consent can confer jurisdiction neither upon a judge before the date designated in his assignment nor upon a District Court which was not constituted according to law for the trial.

This Court should not admit, as admit it must, that the assignment was not operative on the first day of the proceeding and yet hold the court duly constituted for a legal trial. The orderly procedure is the foundation of liberty. To treat the defect as immaterial dulls the fine edge of exact justice. In effect, defendant is precluded from even raising the question. The foundation is thus laid for the holding of federal court by an unqualified intruder without recourse by a defendant and without compliance with applicable statutes.

The judgment of conviction should be held void in the interest of a due and proper administration of justice.

---

4. This Court appears inconsistent in holding this defect is immaterial, whereas it has held that the giving of an inconsequential instruction by the trial judge, unexcepted to by defendant, may be noted by the court of its own motion for reversal. Herzog v. United States, 9 Cir., 235 F.2d 664.

APPENDIX

The following opinion was announced by the majority of the panel of this Court upon the initial hearing. It is now superseded by the opinion of the Court en banc.

JAMES ALGER FEE, Circuit Judge.

This appeal raises the question of whether a judgment of conviction of a defendant can stand where there was no properly constituted court on the day the proceeding opened and twelve persons were placed in the bar and in form took oath to try such defendant.

Leary was sentenced to a period of six years in a federal penitentiary after a proceeding such as has been above described on an indictment charging him with knowing possession of property stolen from a vessel engaged in interstate commerce.[1] No question is raised here as to the evidentiary basis of the sentence. The record before this Court would be sufficient to sustain a verdict of guilty if the proceeding had been held before a duly constituted court.

The single question is raised as to the validity of the organization of the court on July 31, 1956, the day upon which the proceeding opened. The scene was one of the courtrooms regularly used by the United States District Court for the Northern District of California, Southern Division. The regular venire were present. But there was no judge qualified at that time to sit in the District or the particular case.

The person presiding over the proceedings on July 31, 1956, had no authority under the statutes to hold the court. The case on the indictment against Leary was called for trial nevertheless. Twelve persons were found qualified and had places in the jury box. The customary form of oath was administered to them as to a jury panel. The person presiding

---

1. 18 U.S.C.A. § 659.

thereafter suggested to counsel, after the jury had left the room, that his official designation called for him to hold court in the Northern District of California commencing August 1, 1956. He said he could get the assignment amended by a nunc pro tunc order, so as to authorize him to hold court on July 31, 1956. He said, however: "Officially I am supposed to start tomorrow morning, but actually we selected the jury and are starting today." He then asked defendant to waive any contention "with respect to my having started a day early" and added "that actually the trial is commenced one day prior to my official designation to sit in this District Court."

The attorney for defendant, who for personal reasons was in a hurry to expedite the proceeding, stated on behalf of defendant that he would waive any defects and that the procedure would redound to the advantage of defendant since he had been in custody a considerable time. The person presiding then asked defendant if he understood, if he was agreeable and if he waived, to which the latter responded that he did. Thereafter, on that same day, an opening statement was made by the government attorney, the defense reserving its statement to the end of the case. Three witnesses were then sworn seriatim and each testified.

On August 1, 1956, the proceeding was continued before the same twelve persons and a duly and regularly appointed and acting United States District Judge of a District of the Second Circuit, who was duly and regularly assigned "to hold the District Court in the Northern District of California during the period be-

ginning August 1, 1956, and ending August 31, 1956," by the Chief Justice of the United States, pursuant to 28 U.S. C.A. § 292(c). Further testimony was then taken. Final arguments and instructions followed.

The twelve persons returned a verdict of guilty. A purported judgment was entered thereon. A sentence of Leary to six years' imprisonment followed, as has been heretofore noted.

The language of the statute is direct and unqualified. The wording confers this extraordinary power of holding court and discharging judicial duties only "during the period of his designation and assignment."[2] Neither the fact that the judge who presided over the remainder of the proceeding possessed unquestioned authority to hold court in that District on August 1, 1956, nor the fact that he was the same person who governed the courtroom on July 31, 1956, gave him power over the proceedings on the first day. Since he expressly admitted he did not have jurisdiction on that day, the consent of defendant did not invest him with judicial power.

At the outset, the matter will be discussed with reference to the person presiding on the first day. He was not judge de jure of the Northern District of California on July 31, 1956. No law or statute gave him any power or authority to hold that court. The statute is express as to the method whereby a District Judge of one Circuit can acquire jurisdiction to hold District Court in a District of another Circuit.[3] As to July 31, the prescribed steps precedent had not been taken.

2. 28 U.S.C.A. § 296.

3. The requirements of 28 U.S.C.A. §§ 292 (c) and 295 are indicated in the instrument issued pursuant thereto by the Chief Justice, which specifically designated and assigned the judge for a period commencing August 1, 1956. The designation is in part as follows:

"Designation of District Judge for Service in Another Circuit

"The Chief Judge of the Ninth Circuit having certified that there is a necessity

for the assignment of a judge from another circuit to perform the duties of district judge and hold a district court in the Northern District of California; and that the Chief Judge of the Second Circuit having consented to the designation and assignment of * * *, United States District Judge for the Southern District of New York, in that Circuit, to hold the District Court in the Northern District of California during the period beginning August 1, 1956, and ending August 31, 1956, now, therefore, pursu-

The person presiding was not judge de facto on July 31. All authorities hold that there must be color of authority to give semblance of validity to the specious acts of one assuming to exercise functions of an office.[4] Here there was a deliberate attempt to exercise the function of judge, although he expressly recognized he had no such power under the positive language of the assignment and the statute. The suggestion that he was judge de facto is unfounded.

In Frad v. Kelly, 302 U.S. 312, 58 S. Ct. 188, 82 L.Ed. 282, Judge Inch, a duly appointed District Judge of the Eastern District of New York, was regularly assigned to the Southern District of New York.[5] On this assignment, he regularly tried Frad with a jury. Upon conviction, the judge sentenced Frad to imprisonment on one indictment and suspended imposition of sentence on two other indictments for a definite period. When Frad had served sentence on the first indictment and before the probation period expired, he petitioned Judge Inch for discharge. The United States Attorney for the Southern District, by stipulation that Judge Inch might hear a subsequent motion in the Southern District, and the probation officer of that District, by appearing at a hearing be-

fore Judge Inch in the Eastern District, gave implied consent. Judge Inch entered an order revoking probation, discharging Frad from further supervision and terminating the proceedings against him.

Later a judge of the Southern District granted habeas corpus as to Frad, on the theory that the discharge by Judge Inch was valid. The Court of Appeals reversed, holding the Inch order void.[6] The United States Supreme Court affirmed the Court of Appeals, holding that the discharge of Frad by Judge Inch was null and void since the judge had no authority under the assignment statute "to hear a new matter even though that new matter may arise in the same case."[7]

It is not necessary to go nearly so far in this case to avoid the judgment of conviction. In the Frad case, the assignment was between two districts of the same Circuit, which, under the enactment there governing, has not the formalistic conditions precedent to jurisdiction which are present in the Act under consideration in the instant case.[8] The assignment of a District Judge from a District in one Circuit to a District in another has strict formalities and can be issued solely by the Chief Justice of the United States.[9] Unless strictly com-

---

ant to the authority vested in me by Title 28, United States Code, Section 292 (c), I do hereby designate and assign [him] * * * to perform the duties of district judge and hold a district court in the Northern District of California during the period beginning August 1, 1956, and ending August 31, 1956, and for such further time as may be required to complete unfinished business.
 "Earl Warren,
 Chief Justice of the United States.
"Dated, Washington, D. C., July 13, 1956.
 "Filed June 19, 1956,
 C. W. Calbreath, Clerk."

4. The usual statement of the rule is that "a judge de facto is one acting with color of right and who is regarded as, and has the reputation of, exercising the judicial function he assumes." 48 C.J.S. Judges § 2, p. 949.

5. Assignment was made by the Senior Circuit Judge pursuant to 28 U.S.C. § 17 (1940 ed.), with the powers provided by

28 U.S.C. § 22 (1940 ed.). The substance of these provisions is now found in 28 U. S.C.A. §§ 292(b) and 296.

6. The opinion of the Court of Appeals is reported in Kelly v. United States ex rel. Frad, 2 Cir., 89 F.2d 866.

7. Frad v. Kelly, 302 U.S. 312, 317, 58 S. Ct. 188, 191, 82 L.Ed. 282.

8. 28 U.S.C.A. § 292(b) gives to the Chief Judge of a circuit the discretionary power to "designate and assign temporarily any district judge of the circuit to hold a district court in any district within the circuit."

9. The Chief Justice may designate and assign District Judges of one circuit for service in another only (1) "upon presentation of a certificate of necessity by the chief judge or circuit justice of the circuit wherein the need arises" (28 U.S. C.A. § 292(c)), and (2) with "the consent of the chief judge or judicial coun-

plied with, the District Judge designated acquires no jurisdiction.

Now in this case, as in the Frad case, we believe there was no arbitrary seizure of power, but it seems plain that, as Judge Inch relied upon the consent of all concerned to cure a lack of jurisdiction, not of the court but of the person presiding, a similar fallacy was here committed. It must be noted in the Frad case all parties concerned had apparently consented. Frad had petitioned for the exact relief, so that not only his acquiescence, but also complete waiver by him was assured. As to the United States Attorney and the probation officer, the court says:

> "Neither of these officers could confer jurisdiction upon a designated judge to perform acts *not authorized by the assignment act* outside the district of designation after his term of service had ended." [10]

The Act was thus construed to hold the proceeding null and void and to the detriment of a defendant who thereupon received additional sentences for violation of a probation order which he did not know was in effect.[11] It is improper then to hold that a defendant could by consent cure a similar defect of jurisdiction under a stricter enactment and to his detriment allow a judgment of conviction to stand.[12] Undoubtedly, Judge Inch could have had his assignment amended or have taken other steps to give him power to act. But he did not. Neither did the designated judge in the instant case.[13]

There are inconsistencies in the administration of law. But courts should not crystallize into an axiom the vulgar slander that the defendant is always wrong. The rules of law are binding upon judges also. Where jurisdiction is absent, it should be so declared.

cil of the circuit from which a judge is to be designated and assigned." 28 U.S. C.A. § 295.

10. Frad v. Kelly, 302 U.S. 312, 319, 58 S. Ct. 188, 192, 82 L.Ed. 282. (Emphasis added.)

11. By squarely holding that an assignment did not confer "color of authority" upon a duly appointed judge of another district to perform acts beyond the letter thereof, the Frad case established that such officer is not a judge de facto where he assumes such extralateral powers. The following cases are distinguishable on the ground that there was only a formal defect in the assignment: McDowell v. United States, 159 U.S. 596, 16 S.Ct. 111, 40 L.Ed. 271 (designation failed to take notice of the death of the regular judge for whom the assigned judge was to take the place of and aid); Ball v. United States, 140 U.S. 118, 11 S.Ct. 761, 35 L.Ed. 377 (designation failed to name a new town in which a term of the District Court to which the judge had been assigned was to be held); Reynolds v. Lentz, 9 Cir., 243 F.2d 589, certiorari denied 354 U.S. 939, 77 S.Ct. 1402, 1 L.Ed. 2d 1538 (authority of the Chief Judge of the Court of Appeals to make the designation questioned) (see also Mitchell v. Snipes, 9 Cir., 245 F.2d 691, 692); United States v. Marachowsky, 7 Cir., 213 F.2d 235 (designation permitted assigned

judge to perform "unfinished business") ; Rakes v. United States, 4 Cir., 163 F.2d 771, certiorari denied 335 U.S. 826, 69 S. Ct. 51, 93 L.Ed. 380 (no power or authority exercised) ; Luhrig Collieries Co. v. Interstate Coal & Dock Co., 2 Cir., 287 F. 711, certiorari denied 262 U.S. 751, 43 S.Ct. 700, 67 L.Ed. 1215 (designation not on file in District Court).

The existence of a valid assignment, the consent of all parties and the claim of right to act by Judge Inch did not confer upon him "color of authority." He therefore was not a judge de facto of the Southern District.

12. In light of the Frad case, the following cases, which do not concern judges whose authority depends upon a designation, are inapposite: Ex parte Ward, 173 U.S. 452, 19 S.Ct. 459, 43 L.Ed. 765 (duly appointed judge filled office prior to Senate confirmation) ; In re Manning, 139 U.S. 504, 11 S.Ct. 624, 35 L.Ed. 264 (judge-elect appointed to fill vacancy that existed immediately prior to his term).

13. In effect, the period of service established by the designation defines the office of the assigned judge. "Where no office legally exists, the pretended officer is merely a usurper, to whose acts no validity can be attached * * *." Norton v. Shelby County, 118 U.S. 425, 449, 6 S.Ct. 1121, 1129, 30 L.Ed. 178.

We are constrained to decide that the person presiding in the proceeding in question on the instant case had no right to hold court in the Northern District of California on July 31, 1956. His express direction to exercise the authority of judge upon August 1 did not relate back. The limitation in the written order of assignment was jurisdictional. Since the person presiding did not claim or possess any other designation, he had no color of authority to exercise the office,[14] and all of his acts were void. Consent cannot aid lack of jurisdiction.[15]

All the discussion so far is in limine. We are brought thereby only to the inexpungable gate in the arch of the sole question in the case.

There was never a court duly constituted to try Leary.[16] "Nullus liber homo capiatur, vel imprisonetur * * * nec super eum mittemus, nisi per legale judicium parium suorum, vel per legem terrae," saith Magna Carta. Leary is now to be imprisoned neither "by the legal judgment of his peers nor by the law of the land," as we paraphrase the quaint Latin of the Great Charter. The Federal Constitution borrowed these fundamentals: "The Trial of all Crimes * * * shall be by Jury."[17] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." [18] And finally: "No person shall be held to answer for a * * * crime, unless on * * * indictment of a Grand Jury * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * * nor be deprived of * * * liberty * * * without due process of law." [19]

Leary was neither tried by jury nor was he accorded due process of law. He cannot therefore be imprisoned. He cannot be deprived of liberty.

The absence of a duly qualified judge on July 31 prevented the organization of a court competent to try, to convict or to sentence Leary. A common law court in felony cases was constituted by a qualified judge and a jury of twelve persons of the vicinage chosen and sworn according to established formula in the presence of defendant.[20] Once these ritualistic requirements were fulfilled, a defendant could not again be compelled to face the same charge a second time, whatever the outcome.[21] The strident insistence upon technical precision in

14. Johnson v. Manhattan Railway Co., 2 Cir., 61 F.2d 934, 938, affirmed 289 U.S. 479, 53 S.Ct. 721, 77 L.Ed. 1331. It is noted that in the Johnson case the authority and status of the judge under his designation were not in issue, as he had acted within the terms of that instrument. The principal question facing the court was the effect of the violation of non-jurisdictional district court rules pertaining to the assignment of designated judges to particular functions by the Senior District Judge.

15. This is axiomatic. See Ahrens v. Clark, 335 U.S. 188, 193, 68 S.Ct. 1443, 92 L.Ed. 1898; Neirbo Co. v. Bethlehem Shipbuilding Corporation, 308 U.S. 165, 167, 60 S.Ct. 153, 84 L.Ed. 167; State v. Griffin, 303 U.S. 226, 229, 58 S.Ct. 601, 82 L. Ed. 764; Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338; Albrecht v. United States, 273 U.S. 1, 8, 47 S.Ct. 250, 71 L.Ed. 505; Thompson v. State of Utah, 170 U.S. 343, 353–354, 18 S.Ct. 620, 42 L.Ed. 1061; cf. McClaugh-

ry v. Deming, 186 U.S. 49, 68, 22 S.Ct. 786, 46 L.Ed. 1049.

16. "An individual has a right to trial by properly constituted judicial authority * * *." Hague v. C.I.O., 3 Cir., 101 F. 2d 774, 781, modified on other grounds, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

17. United States Constitution, Article III, § 2, cl. 3.

18. United States Constitution, Amend. VI.

19. United States Constitution, Amend. V.

20. " 'Trial by jury,' in the primary and usual sense of the term at the common law and in the American Constitution" includes "trial by a jury of 12 men before an officer vested with authority to cause them to be summoned and impaneled to administer oaths to them * * *." Capital Traction Company v. Hof, 174 U. S. 1, 13, 19 S.Ct. 580, 585, 43 L.Ed. 873.

21. "The general rule is that, where the jury has been empaneled for the trial of a criminal case, jeopardy has attached

these steps arises from the protection which the common law accorded the accused at the outset of a trial. Jurisdiction could only attach where authority was vested in the judicial officer presiding at the time of the impanelment and swearing of the jury. If authority is not so in him vested at that moment, there are thirteen persons going through futile motions ending in frustration. If jurisdiction of the court did not attach at that precise point of time, the opportunity passed forever. The court could not be organized by amendment of the commission of the judge nunc pro tunc. The court could not be constituted thereafter by consent of defendant.[22] The fact that a duly qualified judge was present the next day and twelve competent persons, who might have been jurors, did not give jurisdiction to the court for trial of Leary.

As has already been noted, on July 31, 1956, the proceeding opened and a jury was apparently impaneled and sworn, opening statements were made and the testimony of three witnesses taken. If proceedings on that day were valid, jeopardy attached and Leary has no recourse.

The affair was coram non judice. Jeopardy did not attach in this case with the administration of the oath to the persons in the box.[23] These persons therefore did not become a jury by subsequent

happenings. Their alleged verdict was then invalid and the form of judgment of conviction void.

No one has said yet and, specifically, no court has held that, where at the outset of a trial there was not a duly qualified judge or a qualified jury impaneled and sworn in a duly qualified court, jeopardy attached.

Leary could not put himself in jeopardy by his consent for the proceeding to go forward. If the record be analyzed, it is crystal clear he was not asked to waive a duly constituted court or to waive a jury trial or to consent to place himself in jeopardy, which had in reality never attached. Apparently, even the person presiding exhibited no appreciation of the enormity of the change of status when he asked Leary to consent to his starting a day early. It must be remembered as a striking fact that he and not the United States Attorney and not Leary, the defendant, initiated the attempt to have his jurisdiction validated by acquiescence. The supposed consent was not voluntary, was enforced by circumstance, and was totally without understanding.[24] Such supposed consent could not give life or validity to proceedings invalid at the inception. Acquiescence could not create in the past the essential jurisdiction of a duly organized court.

* * *." Cornero v. United States, 9 Cir., 48 F.2d 69; Hunter v. Wade, 10 Cir., 169 F.2d 973, 975, affirmed sub nom., Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974. See Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199.

22. Compare William Cramp & Sons Ship & Engine Building Company v. International Curtis Marine Turbine Company, 228 U.S. 645, 33 S.Ct. 722, 57 L.Ed. 1003, where the Supreme Court in a civil case held that consent of parties to an appellate judge, who was prohibited from sitting by statute, was ineffective.

23. The Supreme Court has announced that "a person has been in jeopardy when he is regularly charged with a crime before *a tribunal properly organized and competent to try him.*" Kepner v. United

States, 195 U.S. 100, 128, 24 S.Ct. 797, 804, 49 L.Ed. 114. (Emphasis added.) Those requisites were not present here.

24. Compare Hibdon v. United States, 6 Cir., 204 F.2d 834, where, at the suggestion of the court, the defendant, after the jury had gone out, waived his right to a unanimous verdict. In reversing and remanding for retrial, the Court of Appeals said: "The suggestion for waiver came not from the accused or his counsel, nor even from the district attorney. It was initiated by the judge after twenty-seven minutes of jury deliberation. * * * It is conceivable, in these circumstances, that the hazard of judicial disfavor by an impatient Judge might seem to him [defendant] a serious one." Hibdon v. United States, supra, 204 F.2d at page 839.

A jury trial may be waived even in a criminal case.[25] But it has not been said, and specifically no court has held, that a jury impaneled and sworn and trial commenced in a court defectively constituted, although apparently properly organized at the outset, can be reconstituted by consent.[26] Certainly such a waiver, to be valid, must be with full understanding.

But the record may show Leary guilty. The pickpocket, hanged by James I peremptorily on his progress to London upon his accession, may well have been guilty. Likewise, the characters, hanged by the direction of what Bancroft calls euphemistically "popular tribunals"[27] in the days of gold a century ago in California, may well have been guilty. None will contend any of these were accorded due process of law or given trial in a duly constituted court by jury.[28]

Modern courts are very tender with convicted men when a question similar to this arises after long years of improper imprisonment, after the witnesses have vanished, the judge is dead or the records have disappeared.[29] We order retrials on technical defects where no exception has been taken and with only a suspicion of damage. Public policy seems to require that such a patent infringement as here before us should be corrected on timely review without regard to the proposition that no harm was done.

The writer has been insistent that judgments against guilty persons stand where jurisdiction was present in a properly organized court where the attacks were based upon hearsay or afterthought or rationalization as to limitations.[30] But the constitution of a court is fundamental. The defect cannot be waived. Here, where the person presiding initiated the discussion and it was never explained to defendant that the organization of the court was fatally defective at the moment, defendant cannot be said to have voluntarily consented. If the courts fail to order a proper trial upon direct review, the granting of an order of release after time for appeal has lapsed and many years have gone by and the matter is presented on collateral attack cannot be justified.

25. Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L.Ed. 1461. The requisite number of twelve jurors may also be waived under appropriate circumstances. Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854.

26. Once the court has been duly constituted for a criminal trial and jeopardy has attached, there is authority that a judge may be substituted by consent. See Simons v. United States, 9 Cir., 119 F.2d 539, certiorari denied 314 U.S. 616, 62 S. Ct. 78, 86 L.Ed. 496; Freeman v. United States, 2 Cir., 227 F. 732, contra. But such opinions have no weight in the current situation.

27. Bancroft, Popular Tribunals (1890).

28. The cases are numerous which hold that clear evidence of guilt or even a plea of guilty is not determinative when there is a jurisdictional or constitutional defect in the proceedings. Well known examples are: House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739 (deprivation of right to counsel); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Tumey v. State of Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (lack of impartial judge); Crain v. United States, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097 (lack of formal arraignment or plea to indictment); Post v. United States, 161 U.S. 583, 16 S.Ct. 611, 40 L.Ed. 816 (criminal proceedings brought in improper district).

A plea of guilty does not waive jurisdictional defects. See Berg v. United States, 9 Cir., 176 F.2d 122, 125, certiorari denied 338 U.S. 876, 70 S.Ct. 137, 94 L.Ed. 537; Bloombaum v. United States, 4 Cir., 211 F.2d 944, 945; Lipscomb v. United States, 8 Cir., 209 F.2d 831, 834, certiorari denied 347 U.S. 962, 74 S.Ct. 711, 98 L.Ed. 1105; United States v. Strum, 7 Cir., 180 F.2d 413, 416, certiorari denied 339 U.S. 986, 70 S.Ct. 1008, 94 L.Ed. 1388.

29. See, e. g., United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (coram nobis proceeding); Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (habeas corpus proceeding); United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (§ 2255, 28 U.S.C.A., proceeding).

30. See Burwell v. Teets, 9 Cir., 245 F.2d 154, 169; Simpson v. Teets, 9 Cir., 239 F.2d 890, 891–892; Caywood v. United States, 9 Cir., 232 F.2d 220–231.

It should not be concluded that this opinion is a castigation of the earnest and upright judge who presided at the proceeding. We simply hold that the court was without jurisdiction. The error was committed, however, in the interests of efficiency, and in the haste of the moment the consequences were not apprehended. But this Court is bound to correct this error by setting aside the judgment, not, it may be said, in the interest of Leary, but in the interest of a due and proper administration of courts of justice.

The judgment of conviction is ordered expunged and held void.[31] The District Court may proceed to trial on the valid indictment, to which defendant has pleaded not guilty.

Judgment held void.

---

31. "The judgment of conviction pronounced by a court without jurisdiction is void * * *." Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461. "* * * if it shall appear that the [trial] court had no jurisdiction to render the judgment * * * it will be the duty of this court to order his [habeas corpus petitioner] discharge." Ex parte Bain, 121 U.S. 1, 3, 7 S.Ct. 781, 782, 30 L.Ed. 849.